# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 04-3916/4068

_____

Susan Vaughn, Personal     \*
Representative of the Estate     \*
of Phil Edward Blount,     \*
    \*
       Appellee/Cross-Appellant,     \*
    \*   Appeals from the United States
     v.     \*   District Court for the
    \*   Eastern District of Arkansas.
Greene County, Arkansas; Dan     \*
Langston, Individually and in his     \*
official capacity as Sheriff of     \*
Greene County, Arkansas,     \*
    \*
       Appellants/Cross-Appellees.     \*

_____

Submitted: October 13, 2005
Filed: February17, 2006

_____

Before RILEY, JOHN R. GIBSON, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Susan Vaughn (Vaughn) brought this civil rights action against Greene County, Arkansas (Greene County); Greene County Sheriff Dan Langston (Sheriff Langston); and ten unnamed officers and employees of the Greene County Sheriff's Department to recover damages related to the in-custody death of her brother, Phil Edward Blount (Blount). The defendants moved for summary judgment, with Sheriff Langston also

moving for summary judgment on the basis of qualified immunity. Vaughn moved for partial summary judgment on the issue of the defendants' liability. The district court denied the motions. This appeal followed. For the reasons discussed below, we dismiss in part for lack of jurisdiction, and we reverse and remand in part.

## I. BACKGROUND

### A. Factual Background

On December 23, 2001, Blount, a 46-year-old moderately obese man, was arrested and taken to the Greene County Jail (Jail), where he was incarcerated on a charge of first-degree sexual assault. During the Jail's intake procedure, Blount completed a medical intake form, indicating he had a history of mental illness, headaches, epilepsy/seizures, ulcers, and kidney/bladder problems, but indicating he did not have a history of heart problems or high or low blood pressure. Although Blount had no medications with him upon his arrival at the Jail, Blount's mother, Carolyn Barber (Barber), later brought Blount's medications, including an anti-depressant. Inmate medication logs from the Jail, as well as written jailer statements, indicate Blount received his anti-depressant medication from December 24, 2001, until January 2, 2002, when the Jail ran out of the medication for Blount's last two dosages on that day.[1] According to these records, Blount's new prescription did not arrive until January 4, 2002, but would not be administered until the next day's shift starting at 6:00 a.m.

On January 4, 2002, jailer Chris Hall (Hall) spoke with Blount's cellmate, who said Blount had been ingesting shampoo and engaging in other odd behavior. Hall repeated this information to Jail Sergeant Mark Harmon, who in turn informed the

---

[1]The defendants contend Blount was provided with his prescribed medications by Jail staff from the time of his intake on December 23, 2001, until his death on January 5, 2002. For purposes of our review, we view the facts properly supported by the record in the light most favorable to Vaughn, the nonmoving party. See Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001).

other jailers. Around 3:00 p.m., Blount was moved to an isolation cell to be monitored. At approximately 10:30 or 11:00 p.m., jailer Chris Gray (Gray) observed Blount vomiting in the isolation cell. Blount asked Gray for a nurse because his stomach was bothering him. Gray asked Blount if he was vomiting because of the shampoo he had ingested, but Blount did not respond. Blount was not given the opportunity to see a nurse following his request. During the night and early morning hours, Blount and the other inmates were checked by Jail personnel about once every hour.

On January 5, 2002, at about 5:15 a.m., jailer Michael Johnson (Johnson) observed Blount pacing in his cell and repeatedly drinking water and throwing up. Approximately thirty minutes later, at 5:50 a.m., Johnson went to Blount's cell to give him his medications and observed Blount lying naked on the floor of his cell. Johnson and the shift supervisor entered Blount's cell, found him unresponsive, initiated CPR, and called for an ambulance. Blount was transported to the hospital, where he was pronounced dead. An autopsy led to the determination Blount died of natural causes: arteriosclerotic cardiovascular disease, causing a heart attack that resulted in Blount's death. Detectable amounts of Blount's anti-depressant medication were found in Blount's system during his autopsy.

According to Barber, Blount called her numerous times on January 3 and 4, 2002, and stated he was nauseated and vomiting. Barber attempted to contact Sheriff Langston to ask for someone to take Blount to a doctor, but Barber was unable to reach the sheriff. Barber later went to the Jail twice on January 4, told a Jail staff member Blount was sick, and was told Blount was receiving his medications. Additionally, Vaughn, Blount's sister, called the Jail before Blount's death to tell the Jail staff he was sick. Vaughn also wrote and faxed a letter to Sheriff Langston, informing him Blount had mental problems and needed to be placed in a different facility.

Sheriff Langston, however, did not have any personal interaction with Blount during Blount's incarceration at the Jail and denies receiving notice of any complaints, concerns, or letters from Blount's family members before Blount's death. Sheriff Langston also alleges letters addressed to him typically are read and answered by a subordinate officer, if the subordinate officer can respond adequately to the purported problem. Sheriff Langston would typically never see or read the letter.

### B. Procedural Background

Vaughn, as personal representative of Blount's estate, filed suit under 42 U.S.C. § 1983 against Greene County; Sheriff Langston, both individually and in his official capacity; and ten unnamed defendants as officers and employees of the Greene County Sheriff's Department. Vaughn alleges the defendants were deliberately indifferent to Blount's serious medical needs, because (1) they failed to provide Blount with medical care and supervision for his known mental illness, and (2) Greene County failed to provide any meaningful policy of training Jail personnel to provide medical care to mentally ill persons in custody. The defendants moved for summary judgment, arguing, *inter alia*, Sheriff Langston was entitled to qualified immunity because he was not aware of Blount's medical illness and an effective policy existed to provide medical treatment to inmates. Vaughn also filed a cross-motion for partial summary judgment on the issue of liability.

The district court denied the defendants' summary judgment motion and held Sheriff Langston was not entitled to qualified immunity, given the existence of "a question of fact regarding the Sheriff's knowledge or deliberate lack thereof." The court also denied Vaughn's cross-motion for partial summary judgment.

## II. DISCUSSION
### A. Jurisdiction Over Interlocutory Appeals

The defendants now bring this interlocutory appeal, arguing the district court erred in (1) denying their motion for summary judgment, and (2) holding Sheriff

Langston is not entitled to qualified immunity. Vaughn also cross-appeals from the trial court's denial of her motion for partial summary judgment on the issue of the defendants' liability.

Although a party generally cannot appeal a district court's order denying summary judgment, Pool v. Sebastian County, Arkansas, 418 F.3d 934, 937 (8th Cir. 2005), this court has limited authority to review the denial of qualified immunity, Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005). "Denials of summary judgment based on qualified immunity are immediately appealable to the extent the appeal seeks review of the purely legal determinations made by the district court." Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001) (citing Johnson v. Jones, 515 U.S. 304, 313 (1995)). However, a party asserting a qualified immunity defense may not appeal a summary judgment order "'insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial,' [for] we would have no jurisdiction over the appeal." Id. (quoting Johnson, 515 U.S. at 319-20); see, e.g., Miller v. Schoenen, 75 F.3d 1305, 1308 (8th Cir. 1996) (stating only those issues concerning what an official knew at the time of the alleged deprivation are properly reviewable in a qualified immunity interlocutory appeal). Accordingly, the only issue properly before us is whether the district court erred in holding Sheriff Langston is not entitled to qualified immunity. See Pool, 418 F.3d at 937. We therefore dismiss the remaining issues raised by the defendants and Vaughn for lack of jurisdiction.[2]

In denying Sheriff Langston's motion for summary judgment on the basis of qualified immunity, the district court did not specify the disputed facts on which it

---

[2]At oral argument, both parties appeared to be in agreement the only issue this court must consider is whether Sheriff Langston is entitled to qualified immunity. However, because both parties' briefs address additional issues, the discussion concerning our limited jurisdiction over this interlocutory appeal is included here to address any lingering confusion.

relied, thereby making it difficult for this court to "know what set of facts to assume when [we] answer[] the purely legal question about 'clearly established' law." Johnson, 515 U.S. at 319. In such situations, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." Id.; see, e.g., Hawkins v. Holloway, 316 F.3d 777, 781 n.3 (8th Cir. 2003). Given the brevity of the district court's order, we must now perform this task.

### B. Individual Liability of Sheriff Langston

"Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." Pool, 418 F.3d at 942 (citation omitted). We review de novo the district court's denial of a motion for summary judgment based on qualified immunity. Pagels v. Morrison, 335 F.3d 736, 739 (8th Cir. 2003) (citation omitted). Thus, we will affirm a denial of qualified immunity "if there exists a genuine issue of material fact concerning the [defendant's] knowledge or if the moving party is not entitled to judgment as a matter of law." Lyles v. City of Barling, 181 F.3d 914, 917 (8th Cir. 1999).

To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. See Saucier v. Katz, 533 U.S. 194, 202 (2001); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Wilson, 260 F.3d at 951. With regard to the first inquiry, "[i]t is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Because Blount was a pretrial detainee,

Vaughn's claims are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)); see also Crow, 403 F.3d at 601; Smith v. Copeland, 87 F.3d 265, 268 n.4 (8th Cir. 1996) (stating burden to establish constitutional violations is lighter for pretrial detainees than for convicted prisoners (citing Bell, 441 U.S. at 535 n.16)). Although this court has yet to establish a clear standard for pretrial detainees, see Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994), we repeatedly have applied the same "deliberate indifference" standard as is applied to Eighth Amendment claims made by convicted inmates. See Crow, 403 F.3d at 601; Owens, 328 F.3d at 1027; Whitnack, 16 F.3d at 957.

"Under this standard, an official is deliberately indifferent (reckless) if he disregards a known risk to a prisoner's health." Gregoire, 236 F.3d at 417 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk." Id. Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it. See id.; see also Malley v. Briggs, 475 U.S. 335, 341 (1986) (stating qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

With this standard in mind, we turn to the case before us. Our initial inquiry is whether Blount suffered from an objectively serious medical need and whether Sheriff Langston knew of the need but deliberately disregarded it. See Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). "A serious medical need is 'one that is so obvious that even a layperson would easily recognize the necessity for a doctor's

attention.'" Pool, 418 F.3d at 944 (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991) (per curiam)).

There is no evidence Sheriff Langston knew of Blount's serious medical needs and deliberately disregarded them. Sheriff Langston had no personal interaction with Blount during Blount's incarceration. There is no indication from the record Sheriff Langston knew Blount (1) had been vomiting for several hours, (2) was not provided with his anti-depressant medication for two to three days preceding his death, or (3) had heart problems that put Blount at risk for a heart attack. The only fact concerning Blount's condition allegedly known to Sheriff Langston was Vaughn's letter regarding Blount's mental problems, which Vaughn faxed to Sheriff Langston, and which Sheriff Langston denies receiving. However, even assuming *arguendo* Sheriff Langston received Vaughn's letter, the letter contains no information that would have alerted Sheriff Langston to the conditions leading to Blount's death. Rather, Vaughn's letter speaks of Blount's character and mental problems, and it expresses Vaughn's hope Blount will be placed in an alternative facility for mental treatment. By setting forth only these generalized concerns, Vaughn's letter would not give its reader notice of Blount's heart problems or any potential serious medical needs.

Vaughn argues the proper inquiry in this case is "whether the jailers knew Blount was ill and whether they provided appropriate care." We disagree. Such an assertion attempts to establish Sheriff Langston's liability on a theory of *respondeat superior* for any constitutional violations committed by those directly involved with Blount before his death, and it is well settled the doctrine of *respondeat superior* is inapplicable to section 1983 claims. See Wever v. Lincoln County, Neb., 388 F.3d 601, 606 (8th Cir. 2004); Messimer v. Lockhart, 702 F.2d 729, 732 (8th Cir. 1983). Thus, the knowledge and actions of the Greene County Sheriff's Department jailers are irrelevant to whether Sheriff Langston is entitled to qualified immunity.

Vaughn further contends Sheriff Langston's failure to train Jail personnel on providing care for ill inmates and his policy or custom of deliberately avoiding information regarding the medical conditions and needs of inmates evidences Sheriff Langston's deliberate indifference to Blount's serious medical needs. Again, we disagree. A supervisor "may be held individually liable . . . if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Wever, 388 F.3d at 606 (quotation omitted). Under this theory of liability, Vaughn must demonstrate Sheriff Langston "was deliberately indifferent to or tacitly authorized the offending acts." Id. Vaughn fails to do so. We cannot say Sheriff Langston's practice of delegating to others such duties as reading mail and responding to communications regarding Jail inmates amounts to deliberate indifference. Moreover, there is no indication from the record Sheriff Langston had notice his policies, training procedures, or supervision "were inadequate and likely to result in a constitutional violation." Id. (stating such a showing is required to impose individual liability on a supervisor). We find the present case remarkably distinguishable from Wever, in which this court held the defendant sheriff was put on notice his training procedures and supervision were inadequate given the sheriff knew of two prior suicides in his jail, one of which occurred during his tenure as sheriff. Id. at 607-08.

We experience no hesitation in dismissing Sheriff Langston from this suit on the basis of qualified immunity for one additional reason. During oral argument, when pressed that the only issue properly appealed was whether Sheriff Langston was entitled to qualified immunity, Vaughn's counsel essentially conceded Sheriff Langston could be dismissed from this suit, stating "as long as we still [have Sheriff Langston] on his official capacity . . . which is redundant to the County, I don't know that we really . . . have a beef with that."

"Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Crow, 403 F.3d at 602 (internal quotations and citations

omitted).  Here, Sheriff Langston neither "transgress[ed] bright lines" nor made "bad guesses."  See id.  Our review of the record leads us to conclude Vaughn has failed to demonstrate Sheriff Langston actually knew of any serious medical needs of Blount, deliberately disregarded such needs, or failed to supervise or train his employees properly.  We therefore reverse the district court's denial of qualified immunity for Sheriff Langston.

## III.  CONCLUSION

We dismiss for lack of jurisdiction (1) the defendants' appeal of the district court's denial of their summary judgment motion, and (2) Vaughn's cross-appeal of the district court's denial of her partial summary judgment motion.  We reverse the district court on the issue of qualified immunity for Sheriff Langston, and thus remand the case to the district court for further proceedings consistent with this opinion.

_____