# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2921

———————

Susan Vaughn,                      *
                                   *
              Appellee,            *
                                   *      Appeal from the United States
v.                                 *      District Court for the
                                   *      Eastern District of Arkansas.
Christopher Gray, et al.,          *
                                   *
              Appellants.          *
                                   *

———————

Submitted: December 12, 2008
Filed: March 6, 2009

———————

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE,[1] District Judge.

———————

KYLE, District Judge.

Appellee, Susan Vaughn, commenced this action under 42 U.S.C. § 1983, contending that Appellants were deliberately indifferent to the serious medical needs of her brother, Phil Blount, which resulted in his death. Appellants, several officers and employees of the Greene County, Arkansas Sheriff's Department,

---

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

moved for summary judgment based on qualified immunity, which was denied by the district court.[2] Appellants appeal and we affirm.

## I. BACKGROUND

Vaughn first brought an action against Greene County and Sheriff Dan Langston in his individual capacity. The district court denied summary judgment on the ground of qualified immunity for Sheriff Langston, but we reversed, finding he was entitled to qualified immunity. Vaughn v. Greene County, 438 F.3d 845 (8th Cir. 2006). While the first action was on appeal, Vaughn filed a second action, asserting the same Section 1983 claims against four additional officers and employees of the Greene County Sheriff's Department in their individual and official capacities: Christopher L. Gray, David Wanner, Michael Johnson, and Chris Hall  The two actions were consolidated, and thereafter the four new defendants moved for summary judgment on the ground of qualified immunity. The motion was granted with respect to Chris Hall, but denied for the remaining defendants. Vaughn v. Greene County, Nos. 2:03CV00070, 2:04CV00213, 2007 WL 2409581, at *3-5 (E.D. Ark. Aug. 10, 2007).

In determining that the remaining defendants (hereinafter the "Appellants") were not entitled to qualified immunity, the district court relied upon the following facts as first described by this Court:

> On December 23, 2001, Blount, a 46-year-old moderately obese man, was arrested and taken to the Greene County Jail (Jail), where he was incarcerated on a charge of first-degree sexual assault. During the Jail's intake procedure, Blount completed a medical intake form, indicating he had a history of mental illness, headaches, epilepsy/seizures, ulcers, and kidney/bladder problems, but indicating he did not have a history of heart problems or high or low blood

---

[2] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

pressure. Although Blount had no medications with him upon his arrival at the Jail, Blount's mother, Carolyn Barber (Barber), later brought Blount's medications, including an anti-depressant. Inmate medication logs from the Jail, as well as written jailer statements, indicate Blount received his anti-depressant medication from December 24, 2001, until January 2, 2002, when the Jail ran out of the medication for Blount's last two dosages on that day. According to these records, Blount's new prescription did not arrive until January 4, 2002, but would not be administered until the next day's shift starting at 6:00 a.m.

On January 4, 2002, jailer Chris Hall (Hall) spoke with Blount's cellmate, who said Blount had been ingesting shampoo and engaging in other odd behavior. Hall repeated this information to Jail Sergeant Mark Harmon, who in turn informed the other jailers. Around 3:00 p.m., Blount was moved to an isolation cell to be monitored. At approximately 10:30 or 11:00 p.m., jailer Chris Gray (Gray) observed Blount vomiting in the isolation cell. Blount asked Gray for a nurse because his stomach was bothering him. Gray asked Blount if he was vomiting because of the shampoo he had ingested, but Blount did not respond. Blount was not given the opportunity to see a nurse following his request. During the night and early morning hours, Blount and the other inmates were checked by Jail personnel about once every hour.

On January 5, 2002, at about 5:15 a.m., jailer Michael Johnson (Johnson) observed Blount pacing in his cell and repeatedly drinking water and throwing up. Approximately thirty minutes later, at 5:50 a.m., Johnson went to Blount's cell to give him his medications and observed Blount lying naked on the floor of his cell. Johnson and the shift supervisor entered Blount's cell, found him unresponsive, initiated CPR, and called for an ambulance. Blount was transported to the hospital, where he was pronounced dead. An autopsy led to the determination Blount died of natural causes: arteriosclerotic cardiovascular disease, causing a heart attack that resulted in Blount's death. Detectable amounts of Blount's anti-depressant medication were found in Blount's system during his autopsy.

-3-

According to Barber, Blount called her numerous times on January 3 and 4, 2002, and stated he was nauseated and vomiting. Barber attempted to contact Sheriff Langston to ask for someone to take Blount to a doctor, but Barber was unable to reach the sheriff. Barber later went to the Jail twice on January 4, told a Jail staff member Blount was sick, and was told Blount was receiving his medications. Additionally, Vaughn, Blount's sister, called the Jail before Blount's death to tell the Jail staff he was sick. Vaughn also wrote and faxed a letter to Sheriff Langston, informing him Blount had mental problems and needed to be placed in a different facility.

Id. at *1-2 (quoting Vaughn, 438 F.3d at 847-48).

While Appellants do not deny their knowledge of Blount's repeated vomiting over a seven-hour period and his request for medical assistance, they contend that there is no evidence in the record of their deliberate indifference to Blount's medical needs, and therefore, they are entitled to qualified immunity.

## II.    ANALYSIS

We review de novo the denial of a motion for summary judgment based on qualified immunity. Vaughn v. Ruoff, 253 F.3d 1124, 1127 (8th Cir. 2001).[3] Such review "is limited to issues of law, and we will not review the merits of the case or the sufficiency of the evidence." Id. "However, the nonmoving party is still given the benefit of all relevant inferences at the summary judgment stage, and if a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment." Plemmons v. Roberts, 439 F.3d 818, 822 (8th Cir. 2006) (internal quotations and citations omitted).

_____

[3] Vaughn argues that the Court lacks jurisdiction over this interlocutory appeal. However, it is well settled that "[a] denial of summary judgment on the grounds of qualified immunity . . . may be reviewed on interlocutory appeal." Pace v. City of Des Moines, 201 F.3d 1050, 1052 (8th Cir. 2000) (citing Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)).

In deciding whether an official is entitled to qualified immunity, the Court asks two questions: "(1) whether . . . there was a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful." Vaughn, 438 F.3d at 850. In this case, Appellants argue only that Vaughn has not established the deprivation of a constitutional right, and therefore, we need not address whether that right was "clearly established."

"Deliberate indifference" to a prisoner's serious illness or injury constitutes cruel and unusual punishment under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs.").[4] "Deliberate indifference has both an objective and a subjective component." Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006); Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997). The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. Grayson, 454 F.3d at 808-09; Moore, 123 F.3d at 1086. Appellants do not contest the district court's finding of an "objectively serious medical need," and thus we only address the subjective component of whether Appellants "deliberately disregarded" such need.

---

[4] The conditions of confinement for pre-trial detainees, such as Blount, are analyzed under the Due Process Clause of the Fifth and Fourteenth Amendments, not the Eighth Amendment. Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Nevertheless, we have held that courts should "apply the identical deliberate-indifference standard" for pre-trial detainees and convicted criminals. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005).

In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006). However, while a deliberate-indifference claim requires the establishment of a defendant's actual, subjective knowledge, such knowledge can be demonstrated with circumstantial evidence. See Farmer v. Brennan, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge . . . is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."). Indeed, a factfinder may determine that a defendant was actually aware of a serious medical need, but deliberately disregarded it, "from the very fact that the [medical need] was obvious." Id. Moreover, this Court has noted that the "[i]ntentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention." Gordon, 454 F.3d at 862.[5]

No Appellant claims that he was unaware of the physical symptoms displayed by Blount in the hours before his death. In fact, Appellants were aware that Blount was vomiting throughout the night and requesting medical attention. Rather, Appellants claim that they did not deliberately disregard Blount's serious medical need because they believed that his vomiting was caused by the ingestion of shampoo, and thus, they did not actually "draw the inference" that Blount's vomiting constituted a serious medical need. See Farmer, 511 U.S. at 837.

---

[5] A prison official cannot be held liable for deliberately disregarding the serious medical needs of an inmate without proof of his actual knowledge of that serious medical need. Grayson, 454 F.3d at 808-09; Moore, 123 F.3d at 1086. However, the Supreme Court has held that knowledge may be *inferred* when a risk is so obvious that a reasonable person would recognize it. Farmer, 511 U.S. at 842. The fact that this inference can be drawn using a "reasonable person" framework is not a new legal standard and does not misstate the law of deliberate indifference, as Appellants contend.

It is true that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned." <u>Id.</u> at 838. Indeed, defendants "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." <u>Long v. Nix</u>, 86 F.3d 761, 765 (8th Cir. 1996). Nevertheless, based on their knowledge of Blount's medical symptoms, coupled with his request for medical assistance, a reasonable jury could determine that Appellants were actually aware that Blount needed medical attention, but simply chose to do nothing about it. Appellants' self-serving contention that they did not have the requisite knowledge does not provide an automatic bar to liability in light of the objective evidence to the contrary.

Appellants were aware that Blount was a 46-year-old, mentally ill, moderately obese man with several medical conditions. Blount was behaving strangely and vomiting throughout the night, and Appellants do not deny their knowledge of Blount's continual vomiting over a seven-hour period. Moreover, there was a significant period of time between the alleged ingestion of shampoo and the beginning of Blount's vomiting. Blount allegedly ingested shampoo during the day on January 4, and at 3:00 p.m., he was placed in isolation. It wasn't until 10:30 p.m. that night that Blount was first discovered to be vomiting. Thus, a jury may reasonably infer from these facts that, despite Appellants' contention, they did not actually believe Blount's vomiting to be insignificant or caused by the ingestion of shampoo.

In addition, Blount requested medical attention. The record indicates that Appellants did nothing to address Blount's request for care. No Appellant informed a superior officer of Blount's condition or did anything to assist Blount. A reasonable jury could conclude that Appellants' knowledge of Blount's symptoms and his request for medical assistance, coupled with Appellants' failure to take any responsive action, is sufficient to establish deliberate indifference. <u>See</u>

Hartsfield v. Colburn, 491 F.3d 394, 401 (8th Cir. 2007) (noting that an inference of deliberate indifference is strengthened when "an inmate communicates his distress directly . . . and prison officials fail to respond").

This Court has affirmed the denial of summary judgment based on qualified immunity when confronted with facts similar to those at issue here. In Plemmons, an inmate told prison staff that he felt he was having a heart attack when he was experiencing arm and chest pain, nausea, profuse sweating, and had experienced heart attacks in the past. 439 F.3d at 824. The inmate was in fact having a heart attack, but a jailhouse official did not immediately call for medical assistance, believing the inmate to be having a panic attack. Id. The inmate made further complaints, but was then forced to wait for an undue period of time before an ambulance was called. Id. We held that these facts created a genuine issue as to whether the defendants deliberately disregarded the serious medical condition of the inmate. Id.

Appellants rely on Pagels v. Morrison, 335 F.3d 736 (8th Cir. 2003), and Jackson v. Everett, 140 F.3d 1149 (8th Cir. 1998), to support reversal. In both cases, prison officials received notes from inmates warning of a threat of inmate violence that later materialized, resulting in inmate injury. However, the officials were found not to be deliberately indifferent to a serious risk of harm to the inmates because they had conducted investigations into the notes and determined them to be unfounded and unreliable. Pagels, 335 F.3d at 740-42; Jackson, 140 F.3d at 1151-53. In contrast, Appellants here took no action to investigate, or otherwise respond to, the objective medical symptoms of Blount or his request for medical care throughout the seven-hour period that he was vomiting. A reasonable jury might well conclude that such inaction by Appellants constituted deliberate indifference.[6]

_____

[6] Appellants also argue that Vaughn's claims should be dismissed because "[t]his court has . . . routinely rejected prisoners' claims where there is no cure or

Finally, because the individual Appellants are not entitled to dismissal based on qualified immunity, the claims against Greene County also may stand.

## III.    CONCLUSION

For all the foregoing reasons, we affirm the district court's denial of summary judgment for Appellants based on qualified immunity.

_____

---

treatment for the alleged serious medical need." While the record indicates that Blount suffered from a heart condition, this does not mean that if given prompt medical attention, such care could not have saved or prolonged his life.