# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3859

_____

Shane Bailey,

*Plaintiff - Appellant*,

v.

Don Feltmann, in his individual capacity,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 23, 2015
Filed: January 15, 2016

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Shane Bailey brought a civil rights action under 42 U.S.C. § 1983 against Deputy Don Feltmann of the Jefferson County, Missouri Sheriff's Department, alleging that Feltmann had denied him emergency medical care in violation of his

constitutional rights. The district court[1] granted summary judgment for Feltmann, ruling that Bailey had failed to present sufficient evidence to prove a constitutional violation. Bailey appeals, and we affirm.

## I.

On the afternoon of March 13, 2012, Bailey was at a friend's house. After arguing with his friend, Bailey left the house upset. Once outside, Bailey punched the driver's side mirror of his truck and punched and kicked out the truck's windshield, cutting his right hand in the process. Bailey drove away in his truck but ran out of gas shortly thereafter. Bailey then called for emergency assistance.

Paramedics arrived at the scene at 3:05 p.m. Bailey, who was eighteen years old, told the paramedics that he had been drinking alcohol earlier that day. Bailey eventually allowed the paramedics to evaluate and treat his right hand. The paramedics examined his hand, noting that the area around the lacerations was bruised and swollen and that the bleeding was controlled. The paramedics dressed the wound. The paramedics reported that Bailey then cursed at them and refused further treatment, but Bailey averred by affidavit that he did not refuse treatment.

Deputy Feltmann arrived at the scene shortly thereafter. Feltmann observed the damage Bailey had inflicted on the truck and also saw a large amount of blood on the truck's rear window. Because of the bandages on Bailey's hand, Feltmann could not determine the full extent of Bailey's injuries, but he was aware that Bailey's hand was cut and had been bleeding. Feltmann also could see blood soaking through, and leaking out of, the bandages on Bailey's hand. Feltmann asked Bailey how he sustained the injuries to his hand; Bailey explained that he had punched his truck

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

mirror and windshield. Due to the strong odor of alcohol on Bailey's breath, Feltmann administered a field sobriety test. Feltmann determined that Bailey was intoxicated and placed Bailey under arrest. He later issued summonses to Bailey for the offenses of careless driving and possession of alcohol as a minor.

Feltmann could not recall what he discussed with the paramedics, but one of the two paramedics who treated Bailey testified that the paramedics advised the deputy at the scene that Bailey's right hand needed sutures and that Bailey needed to be taken to an emergency room for evaluation. The paramedic's report reflected that a deputy agreed to transport Bailey to a hospital before taking him to jail. According to Feltmann, however, he believed that the paramedics' treatment of Bailey's hand was sufficient, and he drove Bailey directly to the county jail. During the short time that Bailey was in Feltmann's custody, blood continued to seep through Bailey's bandages, but Bailey did not complain about his hand or request additional medical treatment. When they arrived at the jail, Feltmann released Bailey into the custody of jail personnel. Bailey never saw Feltmann again.

Early the next morning, Bailey's family picked him up from the jail and took him to an emergency room. A physician examined Bailey's right hand, noted that Bailey's pain was mild, determined that his hand was not tingling or numb, and found that he had no loss of sensation in his hand. An x-ray of Bailey's hand showed no fractures. The physician cleaned the wounds and removed a small glass fragment from one of the cuts on Bailey's hand but chose not to suture any of the cuts, because the injuries had occurred nearly twenty-four hours earlier, and the skin was "too rotted" to stitch. He also treated a laceration on Bailey's forehead that was sustained at the jail and sent Bailey home with ibuprofen. A few days later, Bailey returned to the hospital, and a physician removed the stitches on his forehead but did not examine the injured hand. Bailey never sought additional treatment for his hand.

Bailey testified that he suffers from pain in his right hand between his index and middle fingers, but that the pain occurs only rarely. He did not miss any time from work due to his injuries. Bailey's right hand also has several scars from the lacerations. One scar is on the back of Bailey's hand and is approximately one inch long; the others are located on and between his index and middle fingers. Aside from expenses associated with his first visit to the hospital, Bailey could not recall any other costs incurred as a result of the injuries to his hand.

Bailey brought a claim under 42 U.S.C. § 1983 against Feltmann, alleging that Feltmann's decision to transport him to the jail rather than a hospital denied him emergency medical care in violation of the Constitution. The district court ruled that Feltmann's conduct had not violated Bailey's constitutional rights and granted summary judgment for the defense. We review *de novo* the district court's order granting summary judgment, viewing the evidence and all reasonable inferences therefrom in the light most favorable to Bailey.

II.

In a § 1983 action, qualified immunity shields a government official from liability unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome Feltmann's assertion of qualified immunity, Bailey must show (1) that the facts taken in the light most favorable to his case establish a violation of a constitutional right, and (2) that the constitutional right was clearly established as of March 2012, such that a reasonable official in Feltmann's position would have known that his actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009); *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 987-88 (8th Cir. 2009).

Bailey first argues that we should analyze his § 1983 claim against Feltmann for denial of medical care under the objective reasonableness standard of the Fourth Amendment. The Fourth Amendment governs an arrestee's claim alleging excessive use of force, *Graham v. Connor*, 490 U.S. 386, 395 (1989), but this court has not resolved whether an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment. One recent decision, *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012), applied due process analysis to the claim of an arrestee, but the plaintiff there did not invoke the Fourth Amendment, and the issue was not joined. Earlier cases seem to imply—also without discussion of the Fourth Amendment—that the Due Process Clause may govern, *e.g.*, *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 & n.3 (8th Cir. 1999), and there is a conflict in authority elsewhere about how to evaluate this type of claim. *Compare Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011) (applying Fourth Amendment), *with Barrie v. Grand Cty.*, 119 F.3d 862, 865-69 (10th Cir. 1997) (applying Due Process Clause). For present purposes, it is enough to acknowledge that a right under the Fourth Amendment against unreasonable delay in medical care for an arrestee was not clearly established in March 2012. Neither the Supreme Court nor this circuit had announced such a right, and there is no uniform body of authority that might allow us to conclude that the right was clearly established. Nor was it clearly established that a standard of objective reasonableness applies under the Due Process Clause. *Cf. Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Feltmann is therefore entitled to qualified immunity on Bailey's claim that Feltmann acted unreasonably, and the district court properly dismissed that portion of the complaint. We think it prudent to avoid addressing the proper constitutional standard unnecessarily. *See Camreta v. Greene*, 131 S. Ct. 2020, 2031 (2011).

Bailey argues in the alternative that Feltmann's decision to proceed to the jail rather than to a hospital exhibited deliberate indifference to his need for medical attention in violation of his clearly established constitutional rights under the Due Process Clause. Regardless of whether an "unreasonable" decision to forego

-5-

treatment would violate the Constitution, this court deemed it clearly established by 2008 that a pretrial detainee (or an arrestee, *see Spencer*, 183 F.3d at 905 n.3) has a right to be free from deliberately indifferent denials of emergency medical care. *See Thompson v. King*, 730 F.3d 742, 750 (8th Cir. 2013). Bailey's claim fails, however, because he has not produced sufficient evidence to support a finding that Feltmann violated that right.

Our cases in this area borrow from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates. *See Carpenter*, 686 F.3d at 650. To establish a due process violation based on deliberate indifference, Bailey must demonstrate that he suffered from an objectively serious medical need, and that Feltmann had actual knowledge of that need but deliberately disregarded it. *Id.* A medical need is objectively serious if it is supported by medical evidence, such as a physician's diagnosis, or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) (quoting *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)) (internal quotation mark omitted); *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). In this case, Bailey received medical treatment on the morning that he was released from jail, and his claim is premised on harm allegedly arising from the delay caused by Feltmann's failure to arrange a hospital visit the day before.

Bailey did not present a physician's diagnosis or other medical evidence that establishes detrimental effects of the alleged delay in treatment. Bailey missed no time from work as a result of his injuries, and aside from the initial examination, he sought no treatment for his hand and incurred no additional medical costs. The only lingering effects allegedly stemming from the injuries are several scars on and between Bailey's index and middle fingers and an aching pain between those fingers that occurs only rarely. There is no evidence from a physician or other expert that these seemingly modest effects would have been avoided if Feltmann had brought Bailey to a hospital at the time of his arrest. The medical evidence is thus insufficient

to establish an objectively serious medical need for expeditious treatment on the day of Bailey's arrest.

Bailey contends, however, that his serious need for prompt medical treatment should have been obvious to a layperson like Feltmann. Bailey cites the paramedic's statement to Feltmann that Bailey needed sutures and needed to visit an emergency room for evaluation, along with the paramedic's report that a sheriff's deputy said he would transport Bailey to an emergency room for evaluation and care before the arrestee was processed. Bailey also cites the blood soaking through his bandages, and his pained facial expressions. We are not convinced that this evidence creates a submissible case.

The statement of a paramedic that an arrestee needs sutures and further evaluation does not necessarily establish an objectively serious medical need for immediate treatment that would be obvious to a layperson. When Feltmann assumed custody of Bailey, the paramedics had treated and bandaged his hand, and the bleeding was controlled. Feltmann never observed the injury, and the appearance of blood on the bandages did not show profuse bleeding of the sort that might have demonstrated to a law enforcement officer an obvious need for emergency medical attention. Bailey never said anything to Feltmann about his condition or a desire for immediate treatment. Whatever facial expressions Feltmann might have observed would not obviously have demonstrated a serious medical need for urgent care in light of the circumstances.

In sum, Bailey has not presented medical evidence that he experienced a serious medical need for urgent care at the time of his arrest, and there is no evidence that a delay in treatment caused detrimental effects. The circumstances apparent to Feltmann at the time of arrest were not so dramatic that a layperson easily would have recognized an obvious need for immediate care by a physician. Feltmann is thus entitled to qualified immunity.

\* \* \*

The judgment of the district court is affirmed.

_____