# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1341

_____

Dennis Ryan, Jr., as trustee for the heirs and next of kin of Jerome Deon Ladette Harrell

*Plaintiff - Appellant*

v.

Officer Mary Armstrong; Officer Patrick Culloton; Officer Craig Stowell; Officer Gilbert Michalski; Officer Mark Hill; Officer Joseph Klebs; Sergeant Mark Maslonkowski; Officer Adam Seifferman, individually and in their official capacity; Captain Pam Jensen, individually and in her official capacity; Stearns County

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 13, 2016
Filed: March 7, 2017

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

MURPHY, Circuit Judge.

In February 2012 Jerome Harrell surrendered to the Stearns County jail in response to outstanding traffic warrants. He was booked and held overnight. During that time he exhibited bizarre and erratic behavior. The following morning

correctional officers decided to remove Harrell from his cell for a medical assessment. Harrell became unresponsive during the removal procedure and died. The trustee of Harrell's estate sued Stearns County and various correctional officers (collectively the defendants) under 42 U.S.C. § 1983 for violations of Harrell's constitutional rights as well as other claims. The district court granted summary judgment to the defendants. We affirm in part, reverse in part, and remand for further proceedings.

I.

Early in the evening of February 23, 2012 Jerome Harrell surrendered to the Stearns County jail in response to outstanding traffic warrants. Although Harrell was initially cooperative with efforts to book him into the jail, the officer who completed Harrell's initial classification worksheet marked that Harrell had "special needs" and noted that he "appear[ed] high." During the intake process Harrell also began talking about a shooting that had occurred near St. Cloud State University a few days before. Harrell said he "wanted to help the cops figure [it] out" because "[the cops] think it was him" even though he had heard the suspect in the shooting "was wearing a face mask and that the guy had tattoos on his hands" which Harrell did not. Harrell also mentioned that he had just watched a documentary about the rapper Tupac Shakur and "needed to come clean." Based on Harrell's comments during the intake process, a detective from the St. Cloud police department went to the jail at 9:30 pm to meet with him. The meeting lasted approximately one hour; officers noted that Harrell "appeared anxious" after it.

At 11:00 pm that night there was a shift change for the correctional officers. Defendants Mary Armstrong and Patrick Culloton came on duty and were informed at the start of their shift that Harrell appeared high and had exhibited strange behavior. One of the duties of officers at the jail was to perform well being checks (WBCs) every half hour on detainees. Armstrong and Culloton observed that Harrell was behaving oddly during their half hour checks from the beginning of their shift.

When Armstrong checked on Harrell, she saw him "spring up from his bunk with lunging movements and start moving his body as though he was an animal." She also said that Harrell made "loud howling and screaming vocals" throughout the night. Culloton stated that Harrell also banged on his cell door. His behavior was disruptive enough that other detainees asked to have him moved or quieted. Neither Armstrong nor Culloton talked to Harrell during their shift, however, nor did they enter his cell. Although they monitored his behavior by regular checks, they did not request any medical assistance. They were relieved by a new shift of officers shortly before 7:00 am and reported Harrell's behavior to them.

Defendant Mark Hill, one of the officers on the new shift, checked on Harrell shortly after he came on duty. In the course of his checks, Hill observed Harrell "making loud howling noises and pounding on the door." He was also "splashing water from the sink all over the cell with a sheet." At around the same time as Hill made these observations, supervising officer Pam Gacke asked the jail's medical staff to assess Harrell. Since the medical staff believed that Harrell needed to be placed in a restraint chair during that process, he was removed from his cell by a team of four officers (defendants Craig Stowell, Joseph Klebs, Gilbert Michalski, and Adam Seifermann). At the time the team went to enter Harrell's cell, it found him completely naked with a wet sheet draped over his head, screaming and banging on the door. Team members made a video of him shortly before his removal from the cell.

The team's efforts to remove Harrell from his cell were videotaped. When Gacke directed Harrell to back away from his door and lie on his bunk, he did not comply. Then, as the extraction team entered his cell, Harrell rushed at the first officer. The team attempted to subdue Harrell, but he continued actively resisting and bit one of the officers. During this struggle Harrell was knocked to the floor, and several officers held him down while attempting to place his wrists and ankles in restraints. One twice used a taser in drive stun mode.

Once the officers succeeded in handcuffing Harrell, they used scissors to cut away a sheet he had wrapped around his head. Approximately five minutes after the officers first entered Harrell's cell, they found he was no longer responsive. They moved him from his cell to a lower level of the jail where staff attempted to revive him until an ambulance arrived. Harrell was transported to the hospital where he was pronounced dead at 10:00 am.

An autopsy found no significant injury or trauma. Harrell's immediate cause of death was described as "sudden unexpected death during restraint." An investigator who photographed the interior of Harrell's cell shortly after his removal noted that "[t]here was . . . a large pool of blood on the floor that had come from a laceration to Jerome Harrell's head."

The trustee of Harrell's estate filed this lawsuit after his death, alleging that individual correctional officers and Stearns County had violated Harrell's constitutional rights with deliberate indifference to his serious medical needs and excessive force. The individual defendants moved for summary judgment on the basis of qualified immunity. The district court granted them summary judgment after concluding they had not violated Harrell's constitutional rights. It also granted summary judgment on the trustee's claims for failure to train or properly supervise and dismissed the trustee's remaining state law claims without prejudice. The trustee appeals.

## II.

Summary judgment is appropriate if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Our review is de novo, construing the facts in the light most favorable to the nonmoving party. Letterman v. Does, 789 F.3d 856, 858, 861 (8th Cir. 2015). Before the district court and now again on appeal, the defendants argue that they are entitled to summary judgment on the basis of qualified

-4-

immunity. A government official is entitled to qualified immunity unless he has violated a clearly established constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

A.

The trustee first claims that the district court erred by granting summary judgment to defendants Armstrong and Culloton[1] on the claim that they were deliberately indifferent to Harrell's serious medical need by failing to seek treatment for him during their shift. The parties agree that Harrell was a pretrial detainee during his time at the jail and that his deliberate indifference claim is based on the due process clause of the Fourteenth Amendment.[2] The standard we apply in this context "borrow[s] from the Eighth Amendment deliberate-indifference standard applicable to claims of prison inmates." Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016). In order to succeed on a deliberate indifference claim, a pretrial detainee must show that he "suffered from an objectively serious medical need" and that one or more defendants "had actual knowledge of that need but deliberately disregarded it." Id.

_____

[1]In his opening brief and again at oral argument trustee's counsel suggested that he had also alleged deliberate indifference by the other individual defendants for their actions immediately prior to and during the extraction of Harrell from his jail cell. This claim was not pled in the trustee's complaint, however, and was not otherwise presented to the district court. Since we do not consider claims made for the first time on appeal, see Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004), we limit our consideration of the trustee's deliberate indifference claim to the actions of defendants Armstrong and Culloton.

[2]We have previously noted that in this circuit it is an open question whether the standard of the Fourth or the Fourteenth Amendment applies to medical care claims of arrestees. See Bailey v. Feltmann, 810 F.3d 589, 593 (8th Cir. 2016). Since the trustee asserts here that Harrell was a pretrial detainee and "cites authorities applying due process analysis," we address his arguments accordingly. Carpenter v. Gage, 686 F.3d 644, 650 (8th Cir. 2012).

-5-

at 593–94. We have repeatedly observed that ascertaining "[w]hether an official was deliberately indifferent requires both an objective and a subjective analysis." Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014).[3]

The objective component of a claim for deliberate indifference to serious medical needs is satisfied if the medical need in question "is supported by medical evidence, such as a physician's diagnosis, or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Bailey, 810 F.3d at 594 (quoting McRaven v. Sanders, 577 F.3d 974, 982 (8th Cir. 2009)). The district court assumed arguendo that Harrell was suffering from an objectively serious medical need during his time at the jail, and the defendants have not contested that. The record shows that Harrell screamed, howled, and banged his head against the door of his cell for some eight hours. In such a situation "even a layperson would easily recognize the necessity for a doctor's attention." McRaven, 577 F.3d at 982 (internal quotation marks omitted). We agree with the district court that the key question here is not whether Harrell's medical need was objectively serious, but whether Armstrong and Culloton "had actual knowledge of [Harrell's] need but deliberately disregarded it." Bailey, 810 F.3d at 594.

Establishing the subjective component of a deliberate indifference claim requires showing "a mental state akin to criminal recklessness" and neither negligence nor gross negligence are sufficient. Thompson v. King, 730 F.3d 742,

---

[3]In Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), the Supreme Court rejected analysis of a defendant's subjective state of mind in excessive force cases and concluded "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." Id. at 2472–73; see also Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1069–71 (9th Cir. 2016) (en banc) (applying Kingsley to deliberate indifference claims).

We need not decide the applicability of Kingsley to deliberate indifference claims here; even if subjective analysis of these claims is still warranted we conclude the district court erred in granting summary judgment to the defendants.

746–47 (8th Cir. 2013) (internal quotation marks omitted). The requisite mental state may be established through circumstantial evidence, as "a factfinder may determine that a defendant was actually aware of a serious medical need but deliberately disregarded it, from the very fact that the [medical need] was obvious." Id. at 747 (quoting Vaughn v. Gray, 557 F.3d 904, 908–09 (8th Cir. 2009)). Similarly, an obviously inadequate response may create "an inference that the officer recognized the inappropriateness of his conduct." Id. (internal quotation marks omitted).

Evaluating the record before us in the light most favorable to the trustee, we conclude that genuine issues of fact remain on the question of whether defendants Armstrong and Culloton were deliberately indifferent to Harrell's serious medical needs when they allowed him to scream, howl, and bang against his cell door for eight hours without attempting to talk to him or seek medical intervention. It is undisputed that Armstrong and Culloton knew from the beginning of their shift that Harrell was acting peculiarly and both witnessed him engage in strange and disruptive behavior throughout the night. Other detainees even asked Culloton to move Harrell or to make him quiet down. From this evidence a reasonable factfinder could conclude that Harrell was suffering from an obvious medical need and that the failure to talk with Harrell or seek medical treatment for him was a clearly inadequate response that supports an inference of deliberate indifference. See Thompson, 730 F.3d at 747. A reasonable factfinder could therefore conclude that the defendants violated Harrell's constitutional rights.

Additional facts in the record would also support that conclusion. For example, supervising officer Gacke heard about Harrell's behavior shortly after she came on duty at 6:30 am on February 24, 2012 and immediately notified medical staff at the jail that they needed to see him. The fact that she told medical staff at once that Harrell needed attention on the basis of behavior that he had been exhibiting for nearly eight hours could support a finding that Harrell's medical need was obvious and that the failure by Armstrong and Culloton to seek medical intervention was a

deliberately indifferent response. Moreover, the investigator who examined Harrell's cell shortly after his removal noted that there was "a large pool of blood on the floor that had come from a laceration to Jerome Harrell's head." It is unclear when this pool of blood appeared. Viewing the evidence in the light most favorable to the trustee, however, it is possible the laceration and blood resulted from Harrell's banging his head throughout the night as Culloton observed, and that the laceration and blood appeared while he and Armstrong were on duty. If these facts were established, they could support a factfinder's determination that Armstrong and Culloton were deliberately indifferent to Harrell's serious medical needs.

We conclude that the district court erred by granting summary judgment to Armstrong and Culloton on the ground that they were entitled to qualified immunity. Because we conclude that a reasonable factfinder could determine that Armstrong and Culloton were deliberately indifferent to Harrell's serious medical needs, we must consider whether Harrell's right to be free of such treatment was clearly established at the time. See Pearson, 555 U.S. at 232. Although the district court did not reach this question, "[w]hether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law" which "must be resolved de novo on appeal." Elder v. Holloway, 510 U.S. 510, 516 (1994). We may therefore consider whether the constitutional right at issue was clearly established in the first instance. See Canal Ins. Co. v. Ashmore, 126 F.3d 1083, 1086 (8th Cir. 1997).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Id. at 551 (internal quotation marks omitted). A plaintiff need not produce a case directly on point for us to conclude that the right he alleges was violated was clearly established at the time of the violation, however. Id. In all

-8-

cases, "[t]he dispositive question is whether the violative nature of <u>particular</u> conduct is clearly established . . . in light of the specific context of the case." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (citations omitted) (internal quotation marks omitted).

As previously recognized, we "deemed it clearly established by 2008 that a pretrial detainee . . . has a right to be free from deliberately indifferent denials of emergency medical care." <u>Bailey</u>, 810 F.3d at 593. It may be inferred on this record that defendants Armstrong and Culloton were deliberately indifferent to Harrell's objectively serious medical need. We conclude that the violated right alleged by the trustee was clearly established at the time of these actions. <u>See also</u> <u>Thompson</u>, 730 F.3d at 749 (affirming denial of qualified immunity to a correctional officer in a case where "anyone witnessing [the detainee's] condition at the jail would have recognized he needed medical attention" and the defendant "did nothing in response"). We therefore reverse the grant of qualified immunity to defendants Armstrong and Culloton on the trustee's deliberate indifference claims.

B.

The trustee also claims that the district court erred in granting qualified immunity to the defendants on his excessive force claims. We analyze the excessive force claims of pretrial detainees under an objective reasonableness standard. <u>Kingsley</u>, 135 S. Ct. at 2473. Whether the application of force is unreasonable "turns on the 'facts and circumstances of each particular case.'" <u>Id.</u> (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)). We must assess the actions of each officer "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>Id.</u> Factors relevant to assessing the objective reasonableness of force used by officers include:

the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.

The trustee's excessive force claim stems from the defendants' actions in extracting Harrell from his jail cell on the morning of February 24, 2012. The trustee's excessive force allegations primarily focus on two categories of force used by the defendants: (1) the placing of body weight on Harrell while he was on the ground in a prone position, and (2) the deployment of a taser in drive stun mode on two occasions against Harrell during the extraction. After careful review of the record, including the video of the extraction procedure, we conclude that the defendants' actions, both individually and in combination, were objectively reasonable under the circumstances. We therefore conclude that the defendants are entitled to qualified immunity on the trustee's excessive force claim.

Several factors support the foregoing conclusion. Among the most important is the observation that Harrell was actively resisting the extraction procedure by ignoring directives to lie down on his bunk and resisting the defendants' efforts to subdue him once they entered his cell. The defendants' testimony about the degree of Harrell's resistance is corroborated in that multiple defendants purportedly sustained minor injuries, including a defendant who was bitten by Harrell. The video of the extraction shows that the whole procedure lasted no more than five minutes and that the defendants used the weight of their bodies to restrain Harrell for approximately three minutes while he was actively resisting. The defendants' use of a taser was also restricted to the period in which Harrell was fighting the defendants' efforts to subdue him. The defendants are alleged to have twice used the taser set to

-10-

drive stun mode, not an incapacitating mode.  See De Boise v. Taser Int'l, Inc., 760 F.3d 892, 895 n.5 (8th Cir. 2014).  The autopsy performed after Harrell's death showed that he had suffered no significant injury or trauma and listed the immediate cause of death as "sudden unexpected death during restraint."

Under the totality of these circumstances, we conclude that none of the defendants' actions, either singly or in combination, amounted to an objectively unreasonable application of force.  See Blazek v. City of Iowa City, 761 F.3d 920, 923 (8th Cir. 2014) (noting that we have rejected an excessive force claim where an officer "'forcefully threw' the plaintiff to the ground, pinned him down, and placed his weight into the plaintiff's back before handcuffing him" even though the plaintiff had only been passively resisting); Carpenter, 686 F.3d at 649–50 (affirming grant of qualified immunity on excessive force claims to officers who twice tased an individual resisting arrest).  The trustee has thus failed to show that there are genuine factual issues that remain on the question of whether the defendants violated Harrell's right to be free from excessive force.  We therefore affirm the district court's grant of summary judgment on the basis of qualified immunity to the defendants on the trustee's excessive force claim.

C.

The trustee also pled a failure to train claim.  The district court granted the defendants' motion for summary judgment on this claim on the ground that municipal liability cannot attach absent liability on an underlying substantive claim.  See Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994).  Since we have reversed the grant of summary judgment on the trustee's substantive deliberate indifference claim, we also reverse on the trustee's failure to train claim.

The district court declined to exercise supplemental jurisdiction over state law claims pled in the trustee's complaint and therefore dismissed them without prejudice.

-11-

<u>See</u> 28 U.S.C. § 1367(c)(3). Since we are remanding some of the trustee's federal claims for further proceedings, we also vacate the dismissal of the trustee's state law claims and remand them to the district court.

III.

Accordingly, we affirm in part and reverse in part the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II.B. of the court's opinion. I respectfully dissent from Parts II.A., II.C., and III. In my view, the grant of summary judgment in favor of defendants Mary Armstrong and Patrick Culloton should be affirmed for the reasons stated by the district court in its Memorandum Opinion and Order dated January 5, 2016. I would therefore affirm the judgment of the district court.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I concur in sections II.A and II.C of the court's opinion, but I respectfully dissent as to II.B. In my view, genuine issues of material fact remain on the trustee's excessive force claim. I do not dispute that the officers were entitled to use some degree of force to remove Harrell—who was acting oddly, kicking the door, and howling—from his cell. <u>See</u> <u>Kingsley</u>, 135 S.Ct. at 2472–73 (noting that to be held unconstitutional, force knowingly used against pretrial detainee must be objectively unreasonable). But evidence was offered that, viewed in the light most favorable to the trustee, the force the officers continued to use was excessive under the circumstances. <u>See</u> <u>Murchison v. Rogers</u>, 779 F.3d 882, 886–87 (8th Cir. 2015) (noting that our review of the grant of summary judgment is de novo, and we view the evidence in the light most favorable to the non-movant, giving the non-movant

the benefit of all reasonable inferences).  The video of the extraction showed five to six officers crowding into Harrell's eight by ten foot cell, in which a bunk and a toilet consume most of the space.  Harrell was almost immediately taken to the ground and was quickly handcuffed behind his back.  For approximately the first minute and a half of the extraction, although he is heard yelling, Harrell is not visible on the video because he is surrounded by the officers.  When Harrell appears, he is face down on the floor, naked and with a wet sheet tightly wrapped around his face; he is still being restrained but he has stopped making any noise at all.

The trustee presented evidence that the officers understood that placing a person in the prone position and applying pressure to his back, as the officers admitted they did here, could cause breathing difficulty.  The trustee also presented evidence that the officers recognized that Harrell exhibited symptoms of a condition known as excited delirium syndrome (EDS), which they knew could exacerbate the risk of asphyxiation.  While the court views the video as showing Harrell actively resisting for three minutes, in my opinion, the video shows that after about 80 to 90 seconds, Harrell stopped struggling.  While their weight was still on Harrell's back, the officers shackled his ankles with his legs crossed and bent back at the knees.  Viewing the evidence in the light most favorable to the trustee, a reasonable jury could find that too many officers entered a small cell and exerted too much pressure on a distraught man lying prone, thus placing him at high risk of asphyxiation.  A reasonable jury could likewise find that Harrell's bizarre behavior warranted the use of multiple officers to restrain him in the manner that they did.  But these are factual matters that remain in dispute, and are not for the court to decide at summary judgment.

_____

-13-