# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1469

_____

Jody Lombardo; Bryan Gilbert

*Plaintiffs - Appellants*

v.

City of St. Louis; Ronald Bergmann, Sergeant, individually and in his official capacity as an officer for the St. Louis City Police Department.; Joe Stuckey, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Paul Wactor, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Michael Cognasso, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Kyle Mack, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Erich vonNida, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Bryan Lemons, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Zachary Opel, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Jason King, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.; Ronald Degregorio, Officer, individually and in his official capacity as an officer for the St. Louis City Police Department.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2020
Filed: April 20, 2020
_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Jody Lombardo and Bryan Gilbert (together, Lombardo) brought an action under 42 U.S.C. § 1983 against the City of St. Louis (the City) and ten St. Louis Metropolitan Police Department (SLMPD) officers, in their individual capacities, arising from physical contact between the officers and Lombardo's son, Nicholas Gilbert, that Lombardo alleges resulted in Gilbert's death. Lombardo alleges that the officers used excessive force during the incident, which caused Gilbert's death, and that the City is liable for the officers' actions due to an unconstitutional policy and a failure to train its officers. The magistrate judge[1] granted summary judgment in favor of the officers and the City, and Lombardo appeals. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

We recite the facts in the light most favorable to Lombardo, the non-moving party. Walton v. Dawson, 752 F.3d 1109, 1114 n.1 (8th Cir. 2014). On December 8, 2015, SLMPD officers arrested Gilbert on suspicion of trespassing and occupying a condemned building and for failing to appear in court for an outstanding traffic ticket. Arresting officers brought Gilbert to the "holdover," a secure holding facility within the SLMPD's central patrol station, and placed him in an individual cell.

_____

[1]The Honorable Noelle C. Collins, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Gilbert was cooperative throughout the booking process and checked "no" to a question asking whether he had a medical condition of which the officers should be aware. While Gilbert was in the cell, the officers observed him engaging in unusual behavior, including waving his hands in the air, rattling the bars of his cell, throwing his shoe, and bobbing up and down. Officer Jason King then observed Gilbert tie an article of clothing around the bars of his cell and his neck. Officer King stated out loud that Gilbert appeared to be trying to hang himself. After overhearing Officer King's statement, Officer Joe Stuckey entered Gilbert's cell but found Gilbert without any clothing tied to his neck. Officer Stuckey cuffed Gilbert's left wrist but before he could cuff Gilbert's right wrist, Gilbert began to struggle with Officer Stuckey as well as Officer Ronald DeGregorio and Sergeant Ronald Bergmann, who had entered the cell after Officer Stuckey. The officers brought Gilbert to a kneeling position over a concrete bench inside the cell and cuffed his right wrist. Gilbert began to struggle again and thrashed his head on the concrete bench, causing a gash on his forehead. Gilbert also kicked Officer Stuckey, after which Officer Stuckey left the cell and Sergeant Bergmann called for someone to bring in leg shackles.

Officer Paul Wactor brought the leg shackles to Gilbert's cell and assisted Officer King in shackling Gilbert's legs. Pursuant to a request made by Sergeant Bergmann, Officer King left the cell and radioed the dispatcher to request emergency medical services. Officer Stuckey left the holdover and yelled into the hallway, requesting assistance with a combative subject. The holdover alarm was also activated, which broadcasted that an officer was in need of assistance in the holdover. Officer Kyle Mack, one of the officers who responded to the alarm, entered the cell to find the officers struggling to control Gilbert, who was still crouched over the bench. Officer Mack relieved Officer DeGregorio by taking control of Gilbert's left arm. Exhausted, Officer DeGregorio left the cell to catch his breath. To better control Gilbert's movements, Officer Mack assisted the other officers in moving Gilbert from the bench to the prone position on the floor.

After Gilbert was moved to the prone position, Officer Zachary Opel relieved Sergeant Bergmann by taking control of Gilbert's right side. Feeling winded from the struggle, Sergeant Bergmann left the cell. Officers Michael Cognasso, Bryan Lemons, and Erich vonNida also responded to Gilbert's cell to assist in bringing Gilbert under control as Gilbert continued to kick his shackled legs and thrash his body. Officer Cognasso put his knees on the back of Gilbert's calves, Officer Lemons placed his knee on Gilbert's leg, and Officer vonNida held Gilbert's arm or leg to prevent Gilbert from thrashing his body. Throughout the altercation, the officers controlled Gilbert's limbs at his shoulders, biceps, legs, and lower or middle torso.[2] While continuing to resist, Gilbert tried to raise his chest up and told the officers to stop because they were hurting him. After fifteen minutes of struggle in the prone position, Gilbert stopped resisting and the officers rolled him from his stomach onto his side. By this point, each of the named officers had participated in the effort to physically control Gilbert.

At some point while in the prone position, Gilbert had stopped breathing.[3] Officer Mack rolled Gilbert onto his back and initially found a pulse in his neck but eventually was unable to find one. Gilbert was transported to the hospital where he was pronounced dead. Post mortem testing showed Gilbert had a large amount of methamphetamine in his system and significant heart disease. The St. Louis City Medical Examiner's autopsy report stated that the manner of death was accidental and

---

[2]During his deposition, Officer Cognasso stated that while Gilbert was in the prone position, the officers put weight on various parts of his body, including the "upper right side, and then there was, I believe, a lower or middle part of his torso." R. Doc. 77-11, at 4.

[3]During his deposition, Officer Lemons confirmed that he had previously stated, "When the resisting stopped, we stood up. I noticed that he wasn't breathing" and later testified, "All I know is when he stopped breathing, we got up." R. Doc. 67-5, at 16-17. Lombardo argues this testimony shows that the officers did not remove Gilbert from prone restraint until after he stopped breathing.

-4-

that the cause of death was arteriosclerotic heart disease exacerbated by methamphetamine and forcible restraint. Lombardo presented a conflicting expert report, alleging that Gilbert's cause of death was forcible restraint inducing asphyxia.

Lombardo sued under 42 U.S.C. § 1983, alleging 20 counts against Bergmann, Cognasso, DeGregorio, King, Lemons, Mack, Opel, Stuckey, vonNida, and Wactor (collectively, the Officers) and the City. By the time the Officers and the City moved for summary judgment, the only counts remaining were the counts against each named police officer in his individual capacity for use of excessive force and the counts against the City for an unconstitutional policy resulting in a violation of Gilbert's constitutional rights and failure to train its officers amounting to deliberate indifference to the rights of persons with whom the police come into contact. The district court granted the Officers and City's motion for summary judgment on the basis of qualified immunity. The court found that there was no clearly established Fourth Amendment right against the use of prone restraint in this context at the time of the incident. The court also found that because the individual Officers were entitled to qualified immunity, the City could not be held liable for the unconstitutional policy and failure-to-train claims. Lombardo now appeals.

II.

Lombardo argues the district court erred in concluding the Officers were entitled to qualified immunity on the Fourth Amendment excessive force claim. "We review a district court's qualified immunity determination on summary judgment de novo, viewing the record in the light most favorable to [Lombardo] and drawing all reasonable inferences in her favor." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009). In making a qualified immunity determination, we apply a two-prong inquiry: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Mitchell v. Shearrer, 729 F.3d 1070, 1074 (8th Cir. 2013).

We begin by addressing whether Lombardo has presented evidence from which a reasonable jury could conclude that the Officers violated Gilbert's Fourth Amendment right to be free from excessive force because it is dispositive of the case. Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) ("[L]ower courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first."). Lombardo argues the Officers used excessive force when they held the handcuffed and leg-shackled Gilbert in an asphyxiating, prone position within a secure holding cell. In determining whether an officer used excessive force, we apply an objective reasonableness standard. Ryan v. Armstrong, 850 F.3d 419, 427 (8th Cir. 2017). "We must assess the actions of each officer from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (internal citations and quotation marks omitted). We rely on several factors in making this determination:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. (quoting Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)).

Viewing the facts in the light most favorable to Lombardo, we find that the Officers' actions did not amount to constitutionally excessive force. This Court has previously held that the use of prone restraint is not objectively unreasonable when a detainee actively resists officer directives and efforts to subdue the detainee. Id. at 427-28. In Ryan, law enforcement officers attempted to extract a detainee from his cell, which the detainee resisted. Id. at 424. Officers held the detainee down in the prone position and one officer twice deployed his taser in drive stun mode to allow the other officers to place the detainee's wrists and ankles in restraints. Id. In holding that this use of force was not excessive, this Court explained that "[a]mong

-6-

the most important [factors] is the observation that [the detainee] was actively resisting the extraction procedure by ignoring directives to lie down on his bunk and resisting the [officers'] efforts to subdue him once they entered his cell." Id. at 428. Similarly, here, the undisputed facts show that the Officers discovered Gilbert acting erratically, and even though Gilbert was held in a secure cell, it was objectively reasonable for the Officers to fear that Gilbert would intentionally or inadvertently physically harm himself. Further, Gilbert actively resisted the Officers' attempts to subdue him. Indeed, Gilbert struggled with the Officers to such a degree that he suffered a gash to the forehead, and several of the Officers needed to be relieved throughout the course of the incident as they became physically exhausted from trying to subdue Gilbert.

Nonetheless, Lombardo argues that Ryan is not on point. Specifically, Lombardo argues that, unlike Ryan, in which the detainee was held in prone restraint for approximately three minutes until he was handcuffed, id., Gilbert was held in prone restraint for fifteen minutes and was placed in this position only after he had been handcuffed and leg-shackled. Lombardo also argues that she presented expert testimony that Gilbert's cause of death was forcible restraint inducing asphyxia whereas the undisputed cause of death in Ryan was sudden unexpected death during restraint. Id. at 424. We find these differences to be insignificant. This Court has previously noted that "[h]andcuffs limit but do not eliminate a person's ability to perform harmful acts." United States v. Pope, 910 F.3d 413, 417 (8th Cir. 2018), cert. denied, 140 S. Ct. 160 (2019). As discussed above, the undisputed facts show that Gilbert continued to violently struggle even after being handcuffed and leg-shackled. Specifically, after being handcuffed, he thrashed his head on the concrete bench, causing him to suffer a gash on his forehead, and he continued to violently thrash and kick after being leg-shackled. Because of this ongoing resistance, the Officers moved Gilbert to the prone position so as to minimize the harm he could inflict on himself and others.

The undisputed facts further show that the Officers held Gilbert in the prone position only until he stopped actively fighting against his restraints and the Officers. Once he stopped resisting, the Officers rolled Gilbert out of the prone position. Lombardo argues Gilbert's resistance while in the prone position was actually an attempt to breathe and an attempt to tell the Officers that they were hurting him. However, under the circumstances, the Officers could have reasonably interpreted such conduct as ongoing resistance. See Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir. 2017) (finding irrelevant that a nonviolent misdemeanant was not in fact resisting because "he at least appeared to be resisting"). Finally, Lombardo's expert testimony that the use of prone restraint was the principal cause of Gilbert's death is less significant in light of Gilbert's ongoing resistance, his extensive heart disease, and the large quantity of methamphetamine in his system. See Hill v. Carroll Cty., Miss., 587 F.3d 230, 234 (5th Cir. 2009) (finding no excessive force where detainee was hog-tied and plaintiff presented expert testimony that the cause of death was positional asphyxia).

Accordingly, the Officers did not apply constitutionally excessive force against Gilbert. Having concluded that the facts presented do not make out a violation of Gilbert's constitutional rights, we need not evaluate the clearly established prong of the qualified immunity analysis. See Greenman v. Jessen, 787 F.3d 882, 887 & n.10 (8th Cir. 2015) (affirming the district court's grant of qualified immunity based on the constitutional violation prong even though the district court only reached the clearly established prong). We conclude the Officers are entitled to qualified immunity on Lombardo's excessive force claim.

III.

Lombardo also argues the district court erred in granting the Officers and City's motion for summary judgment on the unconstitutional policy and failure-to-train claims. We review de novo a grant of summary judgment. Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009). Lombardo argues that the City is liable under § 1983 because the City's policy for restraining citizens in holding cells is facially unconstitutional and caused a violation of Gilbert's rights and that the City's failure to train its officers or enact constitutional policies amounts to deliberate indifference to citizens' rights. However, "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or Monell . . . liability." Sanders v. City of Minneapolis, Minn., 474 F.3d 523, 527 (8th Cir. 2007). As discussed above, the Officers did not violate Gilbert's constitutional rights. Accordingly, the City cannot be held liable under § 1983.

IV.

For the foregoing reasons, we affirm.

_____