Per Curiam

# SUPREME COURT OF THE UNITED STATES

### JODY LOMBARDO, ET AL. *v.* CITY OF ST. LOUIS, MISSOURI, ET AL.

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 20–391. Decided June 28, 2021

PER CURIAM.

On the afternoon of December 8, 2015, St. Louis police officers arrested Nicholas Gilbert for trespassing in a condemned building and failing to appear in court for a traffic ticket.[1] Officers brought him to the St. Louis Metropolitan Police Department's central station and placed him in a holding cell. At some point, an officer saw Gilbert tie a piece of clothing around the bars of his cell and put it around his neck, in an apparent attempt to hang himself. Three officers responded and entered Gilbert's cell. One grabbed Gilbert's wrist to handcuff him, but Gilbert evaded the officer and began to struggle. The three officers brought Gilbert, who was 5'3" and 160 pounds, down to a kneeling position over a concrete bench in the cell and handcuffed his arms behind his back. Gilbert reared back, kicking the officers and hitting his head on the bench. After Gilbert kicked one of the officers in the groin, they called for more help and leg shackles. While Gilbert continued to struggle, two officers shackled his legs together. Emergency medical services personnel were phoned for assistance.

Several more officers responded. They relieved two of the original three officers, leaving six officers in the cell with

---

[1] Because this case was decided by summary judgment, the evidence here recounted is viewed "'in the light most favorable'" to the nonmoving party (here, Gilbert's parents, the petitioners). *Tolan* v. *Cotton*, 572 U. S. 650, 655–656 (2014) (*per curiam*).

Per Curiam

Gilbert, who was now handcuffed and in leg irons. The officers moved Gilbert to a prone position, face down on the floor. Three officers held Gilbert's limbs down at the shoulders, biceps, and legs. At least one other placed pressure on Gilbert's back and torso. Gilbert tried to raise his chest, saying, "'It hurts. Stop.'" *Lombardo* v. *Saint Louis City*, 361 F. Supp. 3d 882, 898 (ED Mo. 2019).

After 15 minutes of struggling in this position, Gilbert's breathing became abnormal and he stopped moving. The officers rolled Gilbert onto his side and then his back to check for a pulse. Finding none, they performed chest compressions and rescue breathing. An ambulance eventually transported Gilbert to the hospital, where he was pronounced dead.

Gilbert's parents sued, alleging that the officers had used excessive force against him. The District Court granted summary judgment in favor of the officers, concluding that they were entitled to qualified immunity because they did not violate a constitutional right that was clearly established at the time of the incident. *Id.,* at 895. The U. S. Court of Appeals for the Eighth Circuit affirmed on different grounds, holding that the officers did not apply unconstitutionally excessive force against Gilbert. 956 F. 3d 1009, 1014 (2020).

In assessing a claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham* v. *Connor*, 490 U. S. 386, 397 (1989).[2] "A court

——————
[2] Petitioners brought their excessive force claims under both the Fourth and Fourteenth Amendments. See, *e.g.,* First Amended Complaint in No. 4:16–cv–01637, ECF Doc. 28 (ED Mo.), p. 46. We need not address whether the Fourth or Fourteenth Amendment provides the proper basis for a claim of excessive force against a pretrial detainee in Gilbert's position. Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the "'facts and circumstances of each particular

(judge or jury) cannot apply this standard mechanically." *Kingsley* v. *Hendrickson*, 576 U. S. 389, 397 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U. S., at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U. S., at 397.

Although the Eighth Circuit cited the *Kingsley* factors, it is unclear whether the court thought the use of a prone restraint—no matter the kind, intensity, duration, or surrounding circumstances—is *per se* constitutional so long as an individual appears to resist officers' efforts to subdue him. The court cited Circuit precedent for the proposition that "the use of prone restraint is not objectively unreasonable when a detainee actively resists officer directives and efforts to subdue the detainee." 956 F. 3d, at 1013. The court went on to describe as "insignificant" facts that may distinguish that precedent and appear potentially important under *Kingsley*, including that Gilbert was already handcuffed and leg shackled when officers moved him to the prone position and that officers kept him in that position for 15 minutes. See 956 F. 3d, at 1013–1015.

Such details could matter when deciding whether to grant summary judgment on an excessive force claim. Here, for example, record evidence (viewed in the light most favorable to Gilbert's parents) shows that officers placed pressure on Gilbert's back even though St. Louis instructs its officers that pressing down on the back of a prone subject can cause suffocation. The evidentiary record also includes

———————
case.'" *Kingsley* v. *Hendrickson*, 576 U. S. 389, 397 (2015) (quoting *Graham*, 490 U. S., at 396).

well-known police guidance recommending that officers get a subject off his stomach as soon as he is handcuffed because of that risk. The guidance further indicates that the struggles of a prone suspect may be due to oxygen deficiency, rather than a desire to disobey officers' commands. Such evidence, when considered alongside the duration of the restraint and the fact that Gilbert was handcuffed and leg shackled at the time, may be pertinent to the relationship between the need for the use of force and the amount of force used, the security problem at issue, and the threat—to both Gilbert and others—reasonably perceived by the officers. Having either failed to analyze such evidence or characterized it as insignificant, the court's opinion could be read to treat Gilbert's "ongoing resistance" as controlling as a matter of law.[3] *Id.*, at 1014. Such a *per se* rule would contravene the careful, context-specific analysis required by this Court's excessive force precedent.

We express no view as to whether the officers used unconstitutionally excessive force or, if they did, whether Gilbert's right to be free of such force in these circumstances was clearly established at the time of his death. We instead grant the petition for certiorari, vacate the judgment of the Eighth Circuit, and remand the case to give the court the opportunity to employ an inquiry that clearly attends to the facts and circumstances in answering those questions in the first instance.

*It is so ordered.*

_____

[3] While the dissent suggests we should give the Eighth Circuit the benefit of the doubt, in assessing the appropriateness of review in this factbound context, it is more prudent to afford the Eighth Circuit an opportunity to clarify its opinion rather than to speculate as to its basis.

# SUPREME COURT OF THE UNITED STATES

## JODY LOMBARDO, ET AL. *v.* CITY OF ST. LOUIS, MISSOURI, ET AL.

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 20–391.   Decided June 28, 2021

JUSTICE ALITO, with whom JUSTICE THOMAS and JUSTICE GORSUCH join, dissenting.

I cannot approve the Court's summary disposition because it unfairly interprets the Court of Appeals' decision and evades the real issue that this case presents: whether the record supports summary judgment in favor of the defendant police officers and the city of St. Louis. The Court of Appeals held that the defendants were entitled to summary judgment because a reasonable jury would necessarily find that the police officers used reasonable force in attempting to subdue petitioner Lombardo's son, Nicholas Gilbert, when he was attempting to hang himself in his cell. In reaching this conclusion, the Court of Appeals applied the correct legal standard and made a judgment call on a sensitive question. This case, therefore, involves the application of "a properly stated rule of law" to a particular factual record, and our rules say that we "rarely" review such questions. See this Court's Rule 10. But "rarely" does not mean "never," and if this Court is unwilling to allow the decision below to stand, the proper course is to grant the petition, receive briefing and argument, and decide the real question that this case presents.

That is the course I would take. I do not think that this Court is above occasionally digging into the type of fact-bound questions that make up much of the work of the lower courts, and a decision by this Court on the question presented here could be instructive.

The Court, unfortunately, is unwilling to face up to the

choice between denying the petition (and bearing the criticism that would inevitably elicit) and granting plenary review (and doing the work that would entail). Instead, it claims to be uncertain whether the Court of Appeals actually applied the correct legal standard, and for that reason it vacates the judgment below and remands the case.

This course of action may be convenient for this Court, but it is unfair to the Court of Appeals. If we expect the lower courts to respect our decisions, we should not twist their opinions to make our job easier.

When the Court of Appeals' opinion is read in the way we hope our opinions will be interpreted, it is clear that the Court of Appeals understood and applied the correct standard for excessive-force claims. The *per curiam* acknowledges that the Court of Appeals correctly cited the factors that must be taken into account in determining whether the officers' actions were objectively reasonable. *Ante*, at 3; see 956 F. 3d 1009, 1013 (CA8 2020). But the *per curiam* finds it "unclear whether the [Court of Appeals] thought the use of a prone restraint—no matter the kind, intensity, duration, or surrounding circumstances—is *per se* constitutional so long as an individual appears to resist officers' efforts to subdue him." *Ante*, at 3.

Can the Court seriously think that the Eighth Circuit adopted such a strange and extreme position—that the use of prone restraint on a resisting detainee is always reasonable no matter how much force is used, no matter how long that force is employed, no matter the physical condition of the detainee, and no matter whether the detainee is obviously suffering serious or even life-threatening harm? Suppose officers with a combined weight of 1,000 pounds knelt on the back of a frail and infirm detainee, used all their might to press his chest and face into a concrete floor for over an hour, did not desist when the detainee cried, "You're killing me," and ended up inflicting fatal injuries. Does the Court really believe that the Court of Appeals might have

thought that this extreme use of force would be reasonable? Is there any support for that interpretation in the Court of Appeals' opinion?

The *per curiam* latches onto this sentence in the opinion below: "This Court has previously held that the use of prone restraint is not objectively unreasonable when a detainee actively resists officer directives and efforts to subdue the detainee." 956 F. 3d, at 1013; see *ante*, at 3. Read in context, its meaning is apparent.

The sentence recounts *and cites to* what the Eighth Circuit had held in an earlier case, *Ryan* v. *Armstrong*, 850 F. 3d 419 (2017), in which a resisting detainee had been held in a prone position for a period of time. In order to understand the sentence in the opinion below, it is necessary to look at that prior decision. And when the language in the decision below is read in that way, what it obviously means is that the use of prone restraint is not objectively unreasonable ***per se*** when a detainee is actively resisting. That is exactly what the appellees, citing *Ryan*, had argued: "No court has held that placing a resisting prisoner in a prone position while restrained is *per se* unreasonable." Brief for Appellees in No. 19–1469 (CA8), p. 24. That is a correct reading of *Ryan*, and that is how the opinion below interpreted it.

*Ryan* held only that the use of force in that case was reasonable based on "the totality of th[e] circumstances," including the detainee's resistance. 850 F. 3d*,* at 428. The *Ryan* court explained:

> "*Several factors* support the foregoing conclusion. *Among the most important* is the observation that [the detainee] was actively resisting the extraction procedure by ignoring directives to lie down on his bunk and resisting the defendants' efforts to subdue him once they entered his cell." *Ibid.* (emphasis added).

Thus, *Ryan* clearly did not adopt any sort of blanket rule,

and the sentence in this case that the *per curiam* seizes upon did not purport to go beyond *Ryan*.

This Court's *per curiam* refers to one other statement in the opinion below. The *per curiam* states:

> "The [Eighth Circuit] went on to describe as 'insignificant' facts that may distinguish [*Ryan*] and appear potentially important under *Kingsley*, including that Gilbert was already handcuffed and leg shackled when officers moved him to the prone position and that officers kept him in that position for 15 minutes." *Ante*, at 3 (quoting 956 F. 3d, at 1014).

Here, again, the *per curiam* strains to give the Eighth Circuit's opinion a possible interpretation that can justify a remand. But when this sentence is read in context, what it plainly means is not that the duration of the officers' use of force or the fact that Gilbert had been handcuffed and shackled were irrelevant but that certain factual differences between this case and *Ryan* were not significant in the sense that they did not call for a different result.

The court used the term "insignificant" in responding to Lombardo's efforts to distinguish *Ryan*. Lombardo argued that this case is different because Gilbert was restrained for a longer period and, unlike the detainee in *Ryan*, had already been handcuffed and shackled. See 956 F. 3d, at 1014; Brief for Plaintiffs-Appellants in No. 19–1469 (CA8), pp. 14–15. What the Eighth Circuit characterized as "insignificant" were these factual differences between the two cases.*

---

*The Eighth Circuit wrote:

"Lombardo argues that *Ryan* is not on point. Specifically, Lombardo argues that, unlike *Ryan*, in which the detainee was held in prone restraint for approximately three minutes until he was handcuffed, . . . Gilbert was held in prone restraint for fifteen minutes and was placed in this position only after he had been handcuffed and leg-shackled. Lombardo also argues that she presented expert testimony that Gilbert's

Without carefully studying the record, I cannot be certain whether I would have agreed with the Eighth Circuit panel that summary judgment for the defendants was correct. The officers plainly had a reasonable basis for using some degree of force to restrain Gilbert so that he would not harm himself, and it appears that Gilbert, despite his slight stature, put up a fierce and prolonged resistance. See 956 F. 3d, at 1011–1014. On the other hand, the officers' use of force inflicted serious injuries, and the medical evidence on the cause of death was conflicting. See *id.,* at 1012.

We have two respectable options: deny review of the fact-bound question that the case presents or grant the petition, have the case briefed and argued, roll up our sleeves, and decide the real issue. I favor the latter course, but what we should not do is take the easy out that the Court has chosen.

---

cause of death was forcible restraint inducing asphyxia whereas the undisputed cause of death in *Ryan* was sudden unexpected death during restraint. . . . We find these differences to be insignificant. This Court has previously noted that '[h]andcuffs limit but do not eliminate a person's ability to perform harmful acts.' *United States* v. *Pope*, 910 F. 3d 413, 417 (8th Cir. 2018), cert. denied, [589 U. S. ___ (2019)]. As discussed above, the undisputed facts show that Gilbert continued to violently struggle even after being handcuffed and leg-shackled. Specifically, after being handcuffed, he thrashed his head on the concrete bench, causing him to suffer a gash on his forehead, and he continued to violently thrash and kick after being leg-shackled. Because of this ongoing resistance, the Officers moved Gilbert to the prone position so as to minimize the harm he could inflict on himself and others." 956 F. 3d, at 1014.