#29413-r-SPM
**2021 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

The People of the State of South Dakota
in the Interest of N.A., Child,
and
Concerning S.A. and N.G., Respondents.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MATTHEW M. BROWN
Judge

\* \* \* \*

JOANNA LAWLER
LORI KAY GOAD of
Pennington County Public
    Defender's Office
Rapid City, South Dakota                    Attorneys for child and
                                            appellant.


JASON R. RAVNSBORG
Attorney General

ERIN E. HANDKE
Assistant Attorney General
Pierre, South Dakota                        Attorneys for petitioner and
                                            appellee State of South Dakota.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 25, 2021
OPINION FILED **09/29/21**

#29413

MYREN, Justice

[¶1.]        Officer Brandon Bassett (Officer Bassett) responded to a possible drive-by shooting at N.A.'s family's apartment.  When Officer Bassett arrived at the apartment, N.A. informed him that the messages she had sent to her mother reporting the drive-by shooting were a prank.  Acting on his belief that N.A. was impeding the investigation by interfering with his attempts to obtain information from her mother during a telephone conversation, Officer Bassett grabbed N.A., pulled her down onto a mattress on the floor, and handcuffed her.  During the interaction, N.A. kicked Officer Bassett.  The State filed a petition alleging that N.A. was a delinquent child because she assaulted a law enforcement officer.  Following an adjudicatory hearing, the circuit court declared N.A. a delinquent child.  N.A. appeals the circuit court's determination, arguing that she justifiably acted in self-defense because Officer Bassett used excessive force to detain her.  We reverse and remand.

**Facts and Procedural History**

[¶2.]        N.A., a teenage girl, sent her mother several text messages in which she claimed that the family's apartment in Rapid City had been the target of a drive-by shooting by another juvenile, J.W.B.[1]  N.A.'s mother relayed this information to police dispatch.  At around 2:14 a.m., on November 16, 2019, dispatch sent Officer Bassett and Officer Andrew Kimbell (Officer Kimbell) to investigate the report.  The officers contacted N.A. at the family's apartment.  When

---

1.        Officer Bassett testified that J.W.B. is a known gang member who carries firearms.

-1-

they knocked on the door, N.A. answered, and while the officers were talking to her, the lights in the apartment were off. Officer Bassett asked N.A. about the shooting and whether anybody was hurt inside the apartment. N.A. claimed the shooting had not occurred and that her messages were sent as a prank on her mother. She stated that she did not intend the prank to go this far. Officer Bassett then asked N.A. about her relationship with J.W.B. She responded that she did not like him. The officers requested to enter the apartment to confirm that everyone was safe and to investigate whether a shooting occurred. N.A. allowed them inside.

[¶3.] N.A. continued to tell the officers, after they had entered the darkened apartment, that the messages to her mother were a prank. Officer Bassett explained that he was aware that her family had many issues with J.W.B., and N.A. confirmed that they did. He again asked her if her messages were a prank and if she found the situation funny. She ignored him briefly and then again claimed the messages were just a prank. Officer Bassett continued to ask her if the prank "was worth it" and if she found it funny. He then asked if she had heard the story about the little boy who cried wolf and inquired whether she wanted to be that person. While Officer Bassett questioned N.A. in the living room, Officer Kimbell performed a protective sweep of the apartment using his flashlight. He found N.A.'s boyfriend in a bedroom. N.A.'s younger brother was also present in an adjacent bedroom. Officer Bassett testified that the apartment showed no signs that a shooting had occurred.

[¶4.] After Officer Kimbell reviewed the text messages N.A. had sent her mother, Officer Bassett then instructed N.A. to call her mother and to place the call

on speakerphone. She was to tell her mother that her messages were a prank. N.A. complied, placing the call on speakerphone so Officer Bassett and Officer Kimbell could hear the conversation. During this initial conversation, N.A.'s mother asked to speak to law enforcement because she did not believe the texts were a prank. After the officers informed N.A.'s mother that the call was on speakerphone, she told the officers that her daughter had sent her some scary messages. She said the text messages stated that J.W.B. showed up at the apartment, resulting in a fight involving a gun. N.A.'s mother stated that she then called her son, N.A.'s younger brother, and he informed her that somebody was in the apartment, but he had stayed in his bedroom because he was scared. N.A. interrupted to deny that she had said somebody fired shots. When her mother disputed N.A.'s statement, N.A. yelled at her mother, saying her mother was drunk, and then hung up on her mother. During the conversation, Officer Kimbell escorted N.A.'s boyfriend outside the apartment so that he could call the boyfriend's parents.

[¶5.] Officer Bassett asked N.A. why she ended the call. N.A. responded that the messages were a prank. Officer Bassett told N.A. to call her mother back and not to hang up the phone. He told N.A. that she could go to jail for false reporting and commented that "this obviously isn't a joke." N.A. complied and again placed the call on speakerphone. At this point, Officer Kimbell was outside with N.A.'s boyfriend. N.A. remained silent after her mother answered the call, so Officer Bassett took the phone from her. N.A.'s mother asked him to read the text messages because she thought her daughter was lying to the officers. N.A. then yelled, "I'm fucking laughing." Officer Bassett yelled, "Stop, Stop, shut your mouth

right now!" N.A. responded, "I should shut my mouth?" Officer Bassett testified that throughout this interaction he was still investigating the alleged shooting.

[¶6.] Due to N.A.'s behavior, Officer Bassett decided to detain her and place her in handcuffs. Without warning of his intentions, he grabbed N.A. by the arm. She started pulling away and thrashing her body, screaming, "leave me alone, leave me alone." Officer Bassett then pulled her down onto a mattress on the floor. The fall to the mattress allegedly broke N.A.'s glasses. He was able to put his knee into or over N.A.'s back and place handcuffs on her. Officer Bassett testified that, while he was handcuffing her, N.A. kicked him one time in the right leg. During the interaction, Officer Bassett's body camera video picked up N.A.'s brother screaming in the background. The interaction lasted roughly thirty seconds. Throughout this incident, the lights of the apartment were off.[2] When Officer Kimbell returned to the apartment after dealing with N.A.'s boyfriend outside, he turned on the apartment's lights. The video showed N.A. handcuffed and yelling, "let me go." Due to Officer Bassett's movement and the lights being off in the apartment, the video from Officer Bassett's camera does not clearly show details of the physical portion of the incident.

[¶7.] Officer Bassett walked N.A. to his patrol car. N.A., who was barefoot throughout the incident, continued to thrash her body and allegedly attempted to

---

2. The record does not reveal why neither the inhabitants of the apartment nor the officers turned on the lights prior to N.A.'s arrest.

kick Officer Bassett a second time during their walk.[3] Officer Bassett asked N.A. if she thought "it [wa]s okay to act like that?" He also commented about N.A. "trying to kick him." After telling N.A. that she was "going to learn a lesson today[,]" he placed her in his patrol car.

[¶8.] Leaving N.A. in his patrol car, Officer Bassett returned to the apartment to talk to Officer Kimbell. He explained to Officer Kimbell that N.A. tried to kick him while he was taking her down and then again outside. Officer Bassett then returned to his patrol car to transport N.A. to the juvenile service center. In his patrol car, he told N.A., "You are under arrest by the way." Officer Bassett is 240 pounds and, during the interaction, was in uniform, had a gun, taser, and handcuffs on his person. N.A. is a sixteen-year-old female of average stature. Officer Bassett did not suffer any injuries during the incident. He testified that he decided to detain N.A. and place her in handcuffs because she was preventing him from investigating the alleged drive-by shooting.

[¶9.] Later that month, the State filed a delinquency petition alleging that N.A. committed simple assault on a law enforcement officer and disorderly conduct. N.A. denied the allegations. During N.A.'s adjudicatory hearing, the circuit court heard Officer Bassett's testimony, watched his body camera video, and reviewed another video involving Officer Bassett presented for impeachment purposes. At the close of evidence, N.A. requested additional briefing on the standard for when

---

3. The circuit court in its findings of fact and conclusions of law did not address, or even reference, the attempted kick that allegedly occurred outside. Accordingly, that attempted kick was not the factual basis for the circuit court's determination that N.A. committed simple assault against a law enforcement officer.

an individual is permitted to use self-defense against a law enforcement officer. The State agreed to brief the issue, and a briefing schedule was established.

[¶10.] In the State's brief to the circuit court, it claimed N.A. did not introduce evidence at the adjudicatory hearing related to self-defense and claimed Officer Bassett was acting within his lawful authority. In N.A.'s brief to the circuit court, she argued that a citizen is justified in using force to resist a law enforcement officer's use of excessive force. Accordingly, she claimed that if she assaulted Officer Bassett, she acted in self-defense to deter Officer Bassett's use of excessive force.

[¶11.] The circuit court issued its decision in the form of findings of fact and conclusions of law.[4] It determined that Officer Bassett did not use excessive force to detain N.A. Based upon that determination, the circuit court concluded that N.A. was not entitled to assert that she acted in self-defense. Consequently, the circuit court did not decide whether the force she employed to defend herself was reasonable. The circuit court found Officer Bassett's testimony that N.A. kicked him to be credible and concluded that N.A. committed simple assault against a law enforcement officer.[5] *See* SDCL 22-18-1(1) (2020); SDCL 22-18-1.05. It did not find sufficient evidence to support the disorderly conduct charge. The circuit court issued an order declaring N.A. to be a delinquent child as defined by SDCL 26-8C-2.

---

4. The record does not indicate that either party presented proposed findings of fact or conclusions of law or had any opportunity to object to the court's findings of fact and conclusions of law before their entry. Consequently, N.A. raised her objections at the next court hearing, the dispositional hearing.

5. SDCL 22-18-1 provides, "A person is guilty of simple assault . . . if the person: (1) [a]ttempts to cause bodily injury to another and has the actual ability to cause the injury[.]" The 2021 Legislature amended a portion of the statute not involved in this action.

[¶12.]     At the dispositional hearing, N.A. raised various objections to the circuit court's findings of fact and conclusions of law. She objected to the circuit court's finding which stated that Officer Bassett's use of force was reasonable, because she claimed it was a legal conclusion. She also argued that the circuit court erred in its excessive force determination because it did not apply the factors for determining whether an officer's force was excessive as set forth in *United States v. Drapeau*, 644 F.3d 646, 654 (8th Cir. 2011). Regarding her self-defense claim, she also argued that the circuit court did not consider the circumstances from her perspective as is required by law. N.A. then moved the circuit court to reconsider its ruling. N.A.'s father made a passionate plea on his daughter's behalf, arguing that the officer used excessive force. The circuit court denied the request to reconsider its ruling and gave a lengthy explanation about how it handles alleged police-misconduct cases. The circuit court granted a suspended adjudication without any probation or other conditions.[6]

[¶13.]     N.A. appeals, raising two issues:

1.     Whether the circuit court erred by finding that Officer Bassett did not use excessive force against N.A.

2.     Whether the circuit court erred by rejecting N.A.'s self-defense claim.

---

6.     The circuit court stated, "At the end of the day and in disposition of this particular case, the [c]ourt deems that any further action is unnecessary. I'm not putting you on probation. I'm not giving you any time suspended . . . . I don't believe that any further oversight or punishment is necessary in this matter."

## Analysis and Decision

### 1. Whether the circuit court erred by finding that Officer Bassett did not use excessive force against N.A.

[¶14.]     N.A. argues that Officer Bassett used excessive force against her and, as a result, violated her Fourth Amendment right to be free from unreasonable seizures.  She alleges that the circuit court erred by failing to analyze her excessive force claim under the factors set forth in *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).[7]  N.A. further argues that the circuit court erred by stating, at the dispositional hearing, that it was not in a position to judge Officer Bassett's conduct.[8]

[¶15.]     We review N.A.'s claim that Officer Bassett used excessive force under the de novo standard of review.  *See In re C.C.H.*, 2002 S.D. 113, ¶ 8, 651 N.W.2d 702, 705 (stating we review an error that "implicates an infringement of a constitutional right" under the "de novo standard of review" (citation omitted)).  "[A]ll claims that law enforcement officers have used excessive force—deadly or

---

7.     The State contends that N.A. did not raise her Fourth Amendment claim to the circuit court and, therefore, did not preserve the issue for appeal.  This argument is without merit.  In N.A.'s brief to the circuit court, she argued that Officer Bassett used excessive force, which permitted her to use reasonable force to defend herself.  She also objected to the circuit court's conclusion of law regarding excessive force.  N.A. preserved her right to appeal.

8.     In making his remarks at the July 2020 dispositional hearing, the circuit court judge referred to the current climate surrounding police misconduct and his personal feelings regarding law enforcement misbehavior.  However, he explicitly stated that his feelings held no bearing on his decision, and his findings of fact and conclusions of law confirm that he did not overlook N.A.'s self-defense claim.  Nevertheless, the judge determined that, outside of N.A.'s self-defense claim, the conduct of the officer was irrelevant.

not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Swedlund v. Foster*, 2003 S.D. 8, ¶ 34, 657 N.W.2d 39, 53 (quoting *Graham*, 490 U.S. at 395, 109 S. Ct. at 1871). This standard requires us to analyze whether "the officer's actions fall within a range of objective reasonableness." *Yellowback v. City of Sioux Falls*, 1999 S.D. 114, ¶ 11, 600 N.W.2d 554, 558 (emphasis omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. Once the relevant facts are determined, the reasonableness of the officer's actions becomes a pure question of law. *Hamen v. Hamlin Cnty.*, 2021 S.D. 7, ¶ 45, 955 N.W.2d 336, 352 (citing *Scott v. Harris*, 550 U.S. 372, 381 n.8, 127 S. Ct. 1769, 1776 n.8, 167 L. Ed. 2d 686 (2007)).

[¶16.]     N.A. argues that the circuit court and this Court should analyze whether Officer Bassett used excessive force under the factors set forth in *Graham*. *Graham* involved a civil action brought under 42 U.S.C. § 1983, alleging that a law enforcement officer used excessive force to detain the aggrieved party. 490 U.S. at 388, 109 S. Ct. at 1868. In its analysis, the Supreme Court explained that the test for reasonableness, involving an officer's use of force, "is not capable of [a] precise definition or mechanical application," but "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight." *Id.* at 396, 109 S. Ct. at 1872 (citations omitted) (internal quotation marks omitted). Because of the inherent risks associated with the duties performed by law enforcement officers, our "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S. Ct. at 1872. Accordingly, we analyze whether a law enforcement officer used excessive force with great deference toward the safety of those officers. The factors set forth in *Graham* and its progeny are useful aids to guide our analysis of the unique situation presented by each case while fulfilling our obligation to "independently assess[ ]" each individual's conduct. *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 806 (8th Cir. 2010) (citation omitted); *see also Lombardo v. City of St. Louis, Mo.*, 141 S. Ct. 2239, 2242, 210 L. Ed. 2d 609 (2021) (stating excessive force claims require "careful, context-specific analysis").

[¶17.]        Officer Bassett arrived at the scene to investigate an allegation of a serious offense—a drive-by shooting. However, he detained and handcuffed N.A. for an alleged *misdemeanor* offense—obstructing an investigation. *See* SDCL 22-11-6. For purposes of our *Graham*-factor analysis, "the severity of the crime at issue" is the crime that allegedly justified the use of force. *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. Here, the pertinent crime was the alleged misdemeanor obstruction offense. "[T]here can be no doubt that officers are permitted to use force when their safety is threatened[,]" but the amount of force warranted diminishes when the offense is non-threatening. *Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010).

*Compare Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (determining it was unreasonable for officer to tackle individual from behind when individual was charged with nonviolent misdemeanor) *with Spenner v. City of Sioux Falls*, 1998 S.D. 56, ¶ 24, 580 N.W.2d 606, 612 (determining officers approaching the vehicle with weapons drawn, having individual kneel on the street, handcuffing him, and placing him in a patrol car was reasonable force because the officers believed the individual was involved in an armed robbery).  The justification for Officer Bassett's force was diminished due to the nature of N.A.'s alleged offense.

[¶18.]     Additionally, Officer Bassett testified that he decided to detain and handcuff N.A. "in order to maintain control over the scene of a possible shooting" because N.A. was "screaming" and "wasn't listening to commands."  At the time of the detainment, the officers had conducted a protective sweep of the apartment. Officer Bassett knew N.A. and her younger brother were the only other persons present in the apartment because her boyfriend had been escorted outside.  N.A. was an unarmed, barefooted, teenage girl of average stature who made no verbal threats of violence or attempts to assault Officer Bassett before he grabbed her arm without warning.  On the other hand, Officer Bassett was an armed, 240-pound adult male who, without warning, pulled N.A. down on to a mattress in a pitch-dark room.  We acknowledge that officers often enter chaotic situations that can escalate to violence without notice; however, the video capturing this interaction reveals this was not one of those situations.  *See Rokusek v. Jansen*, 899 F.3d 544, 547 (8th Cir. 2018) (determining use of force not objectively reasonable because individual was unarmed, non-violent, and smaller than officer).  N.A. posed no "immediate threat

to the safety of the officers or others[.]" *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872.

[¶19.]     We do acknowledge that N.A.'s comments and attitude were disrespectful. When added to the everyday stress and danger encountered by a law enforcement officer, such conduct could be frustrating. Yet "'[t]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative' is not to be condoned." *Bauer v. Norris*, 713 F.2d 408, 412 (8th Cir. 1983) (citation omitted). In this particular situation, N.A.'s comments did not warrant the amount of force Officer Bassett deployed. *See Shannon*, 616 F.3d at 864-65 (determining officer's use of force was excessive even though individual was rude and allegedly poked officer).

[¶20.]     Further, it is undisputed that N.A. was not under arrest when Officer Bassett grabbed her arm, and the video clearly shows that she was not fleeing or physically resisting a command. Thus, Officer Bassett's decision to use force cannot be justified on a claim that N.A. was "actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Boggs v. Pearson*, 2021 S.D. 44, ¶ 38, 963 N.W.2d 304, 316 (quoting *Johnson v. Carroll*, 658 F.3d 819, 827-28 (8th Cir. 2011)); *Small*, 708 F.3d at 1005 (citation omitted). N.A.'s physical resistance came in response to Officer Bassett's unannounced grabbing of her arm. Before this, N.A. had *not* been violent nor attempted to flee.

The only order she received was to "shut up," but then Officer Bassett provided her no opportunity to comply before he employed force.

[¶21.] Other courts have addressed similar situations and held the officer used excessive force. *See Thornton v. City of Rapid City*, 2005 S.D. 15, ¶ 20, 692 N.W.2d 525, 535, *overruled on other grounds by Hamen*, 2021 S.D. 7, 955 N.W.2d 336 (holding officer "tackling a non-felony suspect to the ground from behind where no exigent circumstances exist without first giving him an opportunity to surrender peacefully is unconstitutional"); *Boggs*, 2021 S.D. 44, ¶ 35, 963 N.W.2d at 315 (noting the evidence that the officer took the misdemeanant to the ground without verbal warning); *Johnson*, 658 F.3d at 828 (stating officer's use of force was excessive on "nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, who never received verbal commands to remove herself, and whose only action was to engage in a protective maneuver"); *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012); *Small*, 708 F.3d at 1005; *but see Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) (deeming officer's use of force reasonable because individual failed to comply with officer's warning and continued to walk toward officer).

[¶22.] Based upon our de novo review of this constitutional issue, and after considering the totality of the circumstances, we conclude Officer Bassett used excessive force to detain N.A. when he grabbed and pulled a non-threatening, non-fleeing, and non-resisting female teenager to the ground in a dark room, without warning.

### 2. *Whether the circuit court erred by rejecting N.A.'s self-defense claim.*

[¶23.] N.A. argues that the circuit court erred by rejecting her self-defense claim. She contends that Officer Bassett's use of excessive force justified her use of self-defense. She also advances that the circuit court erred by failing to place itself in her position when determining if her actions were reasonable. She claims that, viewed from her perspective, it was reasonable to defend herself from Officer Bassett's use of force.

[¶24.] The circuit court adjudicated N.A. delinquent for engaging in conduct that constituted simple assault against a law enforcement officer. *See* SDCL 22-18-1(1) (2020); SDCL 22-18-1.05. The offense required the State to prove beyond a reasonable doubt that N.A. assaulted Officer Bassett while he was engaged in the performance of his official duties. *See* SDCL 22-18-1.05. An affirmative defense to simple assault is provided by SDCL 22-5-9(1) (repealed 2021),[9] which states, "Any person, upon reasonable apprehension of threat of bodily injury, may make sufficient resistance to prevent an offense against his or her person[.]" However, a caveat to this defense lies in SDCL 22-18-2, which permits a law enforcement officer in the *performance of his or her legal duty* "to use . . . force . . . toward the person of another[.]" Furthermore, "[a]n individual is not justified in using force" to resist arrest "or other performance of duty by a law enforcement officer *within the scope of his [or her] official duties.*" *Drapeau*, 644 F.3d at 653 (emphasis added); *see also State v. Fender*, 358 N.W.2d 248, 255 (S.D. 1984) (holding defendant was not

---

9. This statute was repealed by the session law titled An Act to Clarify the Use of Force. 2021 S.D. Sess. Laws ch. 93, § 13.

entitled to self-defense instruction because officer was acting *lawfully*). Under these rules, an individual is *only* justified in using self-defense against an officer if the officer is using *excessive force* or acting outside their lawful duty. *See Drapeau,* 644 F.3d at 654; *see also Spenner,* 1998 S.D. 56, ¶ 23, 580 N.W.2d at 612 (stating an officer's force "is unlawful when it becomes greater than necessary to carry out his duties"). When an officer uses excessive force, the officer's actions are no longer "necessarily committed . . . in the performance of any legal duty[.]" SDCL 22-18-2.

[¶25.]     The issue of whether an individual was justified in using self-defense is a question of fact. *State v. Conaty,* 380 N.W.2d 656, 658 (S.D. 1986). Because this is a juvenile proceeding, the circuit court is the finder of fact. However, the court did not reach the issue of self-defense here. At the completion of the evidentiary portion of the adjudicatory hearing, the parties agreed to brief the issue of self-defense. After considering the evidence and the parties' briefs, the circuit court determined that Officer Bassett did not use excessive force, and as a result, it concluded that N.A.'s use of force was not justified. Therefore, it never reached the issue of whether the amount of force N.A. exerted in response to Officer Bassett's excessive force was reasonable. Because we reverse the circuit court's decision regarding excessive force, on remand, the circuit court should complete the analysis of N.A.'s self-defense claim consistent with this decision.

[¶26.]     JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.