# SUPREME COURT OF THE UNITED STATES

JODY LOMBARDO, ET AL. *v.* CITY OF ST. LOUIS, MISSOURI, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 22–510.  Decided June 30, 2023

The petition for a writ of certiorari is denied.  JUSTICE JACKSON would grant the petition for a writ of certiorari.

JUSTICE SOTOMAYOR, dissenting from the denial of certiorari.

"It hurts.  Stop."  These were the words of Nicholas Gilbert just before he died at the hands of St. Louis police officers.  *Lombardo* v. *St. Louis*, 594 U. S. \_\_\_, \_\_\_ (2021) (*per curiam*) (slip op., at 2).  The police arrested Gilbert for trespassing and for failing to show up in court for a traffic ticket.  They took him into custody.  Six hours later, Gilbert was dead.  The facts, taken in the light required at this stage of litigation, show that six officers in a small holding cell held Gilbert face down on the ground in handcuffs and leg irons while at least one officer pressed down on his back for 15 minutes—that is, until Gilbert stopped breathing.

Gilbert's parents sued.  They argued that the police used excessive force against their son, in violation of the United States Constitution.  The parents demanded a jury trial.  The courts below, however, decided that a trial was unnecessary because qualified immunity shielded the officers.  A Federal District Court concluded that the officers did not violate a constitutional right that was clearly established at the time of Gilbert's death.  *Lombardo* v. *Saint Louis City*, 361 F. Supp. 3d 882, 895 (ED Mo. 2019).  The Court of Appeals for the Eighth Circuit went a step further, deciding that the officers did not violate any constitutional right at all.  956 F. 3d 1009, 1014 (2020).  Both courts focused on

Gilbert's perceived "resistance": Prior to his death, Gilbert tied a piece of clothing around the bars of his cell and put it around his neck, attempting to hang himself. When three officers responded, Gilbert struggled. According to Gilbert's parents, however, the evidence shows that after the police handcuffed Gilbert's arms behind his back; shackled his legs; surrounded him with six officers; held Gilbert's limbs down at the shoulders, biceps, and legs; and put deadly pressure on his back, Gilbert's only movements were that of a restrained man desperately trying to breathe. Or, at least, a jury could so find. The Court of Appeals for the Eighth Circuit ignored that possibility, the parents argued.

This Court summarily vacated the decision of the Eighth Circuit. *Lombardo*, 594 U. S., at ___ (slip op., at 4). The Court explained that the inquiry into whether the officers used excessive force required "'careful attention to the facts and circumstances of'" the case. *Id.*, at ___ (slip op., at 3) (quoting *Graham* v. *Connor*, 490 U. S. 386, 396 (1989)). The Court then identified evidence that the Eighth Circuit improperly "failed to analyze" or "characterized" "as insignificant": "the duration of the restraint"; "the fact that Gilbert was handcuffed and leg shackled at the time"; the fact "that officers placed pressure on Gilbert's back even though St. Louis instructs its officers that pressing down on the back of a prone subject can cause suffocation"; "well-known police guidance recommending that officers get a subject off his stomach as soon as he is handcuffed because of that risk"; and the fact that such "guidance further indicates that the struggles of a prone subject may be due to oxygen deficiency, rather than a desire to disobey officers' commands." 594 U. S., at ___–___ (slip op., at 3–4). This evidence, the Court said, was "pertinent to the relationship between the need for the use of force and the amount of force used, the security problem at issue, and the threat—to both Gilbert and others—reasonably perceived by the officers." *Id.*, at ___ (slip op., at 4).

On remand, the Eighth Circuit did not attend to these facts in deciding whether the officers used excessive force. Instead the court simply decided that, even if Gilbert had a constitutional right to be free from excessive force in such circumstances, that right was not "clearly established." 38 F. 4th 684, 686 (2022). In reaching that conclusion, the Eighth Circuit, once again, focused myopically on Gilbert's perceived resistance. The court also ignored that a jury could determine that any actions by Gilbert did not warrant the use of deadly force. The St. Louis police were well aware that prolonged prone restraint with chest compression can cause suffocation.* Yet the officers applied such force to Gilbert anyway, even though he was handcuffed and shackled, and even though six officers were present to hold his limbs down. The Eighth Circuit assumed Gilbert's subsequent movements amounted to "ongoing resistance," *id.*, at 692, rather than efforts to breathe, and the court therefore analogized his case to Circuit precedent in which the subject was actively resisting. On that basis, the Court of Appeals concluded that whatever Gilbert's constitutional rights were in this situation, they were not clearly established. See *id.*, at 691.

Respectfully, I would not let this Court's mandate be so easily avoided. Instead, I would again vacate the decision of the Eighth Circuit and remand for that court to resolve the question of qualified immunity without assuming that Gilbert's final movements were those of a dangerously noncompliant person posing a threat, rather than of a dying

——————

*When asked whether holding a subject in a prone position and pressing on his back could cause suffocation, a representative of the city of St. Louis confirmed, "We train to that, yes." *Lombardo* v. *Saint Louis City*, No. 4:16–cv–01637 (ED Mo., Aug. 31, 2018), ECF Doc. 77–10, p. 26 (deposition of Officer Philip Green). The city's expert likewise agreed that officers should "not compress [a subject's] chest" because "if you compress the chest you can kill somebody." ECF Doc. 77–14, at 7 (deposition of Ronald E. Schwint).

man struggling to breathe while adequately restrained by
handcuffs and leg shackles and surrounded by six officers
in a secure cell.  That factual determination, between re-
sistance or desperation, belongs to the jury.  It should not
be assumed by a court in assessing whether clearly estab-
lished law exists.  By usurping the jury's role, the courts
below guaranteed that Gilbert's parents will never obtain
the trial they have long sought.

  The "clearly established" prong of the qualified immunity
analysis can pose a very high bar for plaintiffs seeking to
vindicate their rights.  Even when government officials vi-
olate the law, qualified immunity shields them from dam-
ages liability unless the "the violative nature of [the] *par-
ticular* conduct is clearly established." *Mullenix* v. *Luna*,
577 U. S. 7, 12 (2015) (*per curiam*) (internal quotation
marks omitted).  When taken too far, as here, this require-
ment allows lower courts to split hairs in distinguishing
facts or otherwise defining clearly established law at a low
level of generality, which impairs the ability of constitu-
tional torts to deter and remedy official misconduct.  See,
*e.g.*, J. Jeffries, The Liability Rule for Constitutional Torts,
99 Va. L. Rev. 207, 256 (2013) ("It is as if the one-bite rule
for bad dogs started over with every change in weather con-
ditions").

  Making matters worse, a court may grant qualified im-
munity based on the clearly established prong without ever
resolving the merits of plaintiffs' claims.  This inhibits the
development of the law.  "Important constitutional ques-
tions go unanswered precisely because those questions are
yet unanswered.  Courts then rely on that judicial silence
to conclude there's no equivalent case on the books." *Zadeh*
v. *Robinson*, 902 F. 3d 483, 499 (CA5 2018) (Willett, J., con-
curring *dubitante*).  If this Court is going to endorse this
"Escherian Stairwell," *ibid.*, then it should instead reex-

amine the doctrine of qualified immunity and the assumptions underlying it. The doctrine is a creation of our own design.

The Constitution's command is clear: Police officers may not use deadly force unless they reasonably believe that a suspect poses a significant threat of death or serious injury to the officers or others. *Tennessee* v. *Garner*, 471 U. S. 1, 3 (1985). We must give officers leeway to use judgment in close situations, but not so much leeway that we nullify the Constitution's protections or permit officers to escape scrutiny by juries. Here, the Eighth Circuit improperly seized the jury's role and went too far in holding that there is no claim for unconstitutionally excessive force when six police officers handcuff, leg-shackle, and surround a man in a secure cell, put him face down on the floor, and push into his back for 15 minutes until he slowly dies. Nicholas Gilbert deserved better from the police. His parents and society deserve better from our courts.